# United States Court of Appeals
## For the First Circuit

Nos. 14-1149
     14-1244

UNITED STATES OF AMERICA,

Appellee,

v.

SANTOS J. MIRANDA-MARTINEZ, a/k/a Santitos, a/k/a Chiquitin,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Raymond E. Gillespie on brief for appellant.
Rosa Emilia Rodríguez-Vélez, Unites States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

June 24, 2015

**KAYATTA**, **Circuit Judge**.  Santos J. Miranda-Martinez ("Miranda") appeals his sentence following his guilty plea to drug trafficking crimes.  He argues that he is entitled to resentencing because the government breached the terms of his plea agreement, and because the district court erroneously imposed a two-level firearm enhancement under the United States Sentencing Guidelines. Finding neither argument persuasive, we affirm.

## I.  Background

Miranda was indicted in 2011 in the District of Puerto Rico for conspiring to import cocaine into the United States (count one) and conspiring to possess cocaine with the intent to distribute (count two).  In 2012, a second indictment charged that, with respect to a different conspiracy, Miranda conspired to possess heroin, cocaine, and marijuana with the intent to distribute (count one); aided and abetted the distribution of those controlled substances (counts two through four); and conspired to possess firearms in furtherance of a drug trafficking crime (count five).  At Miranda's request, the two cases were consolidated for his change of plea hearing and sentencing.  Miranda pled guilty to count one in both indictments pursuant to a plea agreement with the government.

The district court sentenced Miranda to 293 months' imprisonment for count one in each of the two cases, with the terms to be served concurrently, and dismissed the remaining counts in both indictments. The district court calculated the guidelines range using a total offense level above that recommended by the parties in the plea agreement, and also imposed a firearm enhancement not contemplated in the agreement, thereby permitting Miranda to appeal his sentence notwithstanding the plea agreement's waiver of appeal clause.[1] See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

## II. Discussion

### A. The Alleged Breach of the Plea Agreement

Miranda first argues that the government violated the plea agreement when one of the prosecutors stated facts known to the government relating to his possession of firearms during the time period alleged in the second indictment. Because Miranda did not make this argument in the district court, we review for plain error. See Puckett v. United States, 556 U.S. 129, 133–34 (2009).

---

[1] The plea agreement stated that "[t]he defendant hereby agrees that if [the district court] accepts this agreement and sentences the defendant according to its terms, conditions, and recommendations, the defendant waives and surrenders the right to appeal the judgment and sentence in this case."

While Puckett stated that plain error review applies "in the usual fashion" to forfeited arguments that the government breached a plea agreement, id. at 134, the Supreme Court also observed in Santobello v. New York, 404 U.S. 257, 263 (1971), that the fault with respect to the government's failure to uphold its end of a plea agreement "rests on the prosecutor, not on the sentencing judge." And we have ourselves said the same. United States v. Riggs, 287 F.3d 221, 225 (1st Cir. 2002) ("Although plain error review usually applies to errors committed by the court, we have also assessed governmental breaches of plea bargains, in the absence of a contemporaneous objection, under this same standard."). In any event, for the following reasons, we find that the prosecutor's comments at Miranda's sentencing hearing likely did not violate the plea agreement, and therefore could not have constituted plain error.

**1.  The Plea Agreement**

The plea agreement stipulated that Miranda's base offense level should be thirty-six due to the amount and type of controlled substances involved in the conspiracies, and that a downward variance of three levels should apply due to his acceptance of responsibility. The plea agreement also stipulated that the parties "agree that no further adjustments or departures to the

defendant's base offense level shall be sought," and it obligated each party to recommend a sentence within the guidelines range corresponding to the agreed-upon total offense level of thirty-three. That recommendation did not bind the district court, even once it accepted the guilty plea. See Fed. R. Crim. P. 11(c)(1)(B). Rather, the agreement specified that Miranda understood "that the sentence will be left entirely to the sound discretion of the [district court] in accordance with the advisory Sentencing Guidelines."

### 2. The Prosecutor's Statements

The presentence investigation report ("PSR") conveyed that a Drug Enforcement Administration agent learned that Puerto Rico police seized a semi-automatic handgun from Miranda in 2007, that they seized guns from his co-conspirators, and that another one of his co-conspirators carried a gun throughout the period of time covered by the conspiracy in the second indictment. As we explain in more detail below, those facts, if accepted by the district court, called for a two-level enhancement in the guidelines sentencing calculations. See U.S.S.G. § 2D1.1(b)(1). Miranda objected to the PSR's reliance on such an enhancement. In addressing that objection at the beginning of the sentencing hearing, the district court observed of its own account that the

PSR recited that "members of the Police of Puerto Rico seized a semiautomatic handgun from [Miranda]. He denies it. I believe there's a record for that; so, your objection is denied." Counsel then argued the point. He asserted that Miranda himself had no gun; but conceded that "[i]n this case, every single defendant [other than Miranda] . . . , they did possess firearms," and that another defendant who accompanied Miranda to a meeting had a firearm. Counsel also argued that the connection between this case and the alleged 2007 seizure of a gun from Miranda himself was unclear, even if the seizure occurred.

When Miranda's counsel finished his argument, the following colloquy ensued:

**District Court:** Government?

. . . .

**Prosecutor Castellón-Miranda:** . . . . We were the prosecutor [sic] assigned to the case of 12-769, which arises from the drug conspiracy in Juana Díaz. [Miranda] was identified as one of the leaders of this organization, and several cooperators identified the defendant as one that would go to the drug point armed and who would carry firearms in this case. So, the fact that he was arrested, it was also a fact known to the witnesses of the Government. And I understand that the weapon was seized by the Police of Puerto Rico also.

**Defense Counsel:** Can I have a moment with the prosecutor, Judge.

(Government and defense counsel confer.)

**Prosecutor Hernández-Vega:** And, Your Honor, at this time AUSA Olga Castellón clarified what the evidence in that case was. Nonetheless, as part of the plea negotiations, the government reached a plea agreement in which that enhancement was not contemplated; and the total offense level was in consideration of the amount of drugs in relation to the cases and his acceptance of responsibility for a total offense level of 33. Nonetheless, with candor to the Court, we have to indicate what the evidence is and how the incident relates to the offense.

**Defense Counsel:** Did you mention that with respect to the plea agreement this was not contemplated in it.

**Prosecutor Hernández-Vega:** Yes.

**The Court:** That's what she stated. Of course I was very clear to counsel and the defendant that I am not bound by the plea agreement. And there is evidence that the government has to the effect that he did possess weapons during -- sometime during the conspiracy in this case. So, the objection is denied.

In thereafter sentencing Miranda, the district court included the two-level enhancement in its guidelines calculations, explaining its reasoning as follows:

As it was foreseeable that dangerous weapons, including firearms, would be possessed during the drug trafficking conspiracy, a two-level increase is warranted . . . . As you notice,

Counsel, if it was foreseeable that firearms would be possessed.

Miranda now argues on appeal that Assistant U.S. Attorney Castellón's statements breached the government's promise not to seek any upward enhancements.

### 3. Analysis

The applicable law bearing on the prosecutor's conduct seeks to balance competing aims. On the one hand, several opinions of this court expressly provide that "[t]he government's review of the facts of the case . . . cannot constitute a breach of the plea agreement [when] they [are] relevant to the court's imposition of sentence; no limitation can be placed, by agreement or otherwise, on this information." United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004); see also United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000) (noting that under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (alteration in original) (internal quotation marks omitted)); United States v. Hogan, 862 F.2d 386, 389 (1st Cir. 1988) (sentencing judge "has a right to expect that the prosecutor and the probation department"

will "give him all relevant facts within their ken").  Thus, "[t]he mere furnishing" of facts concerning the background, character, and conduct of the defendant "gives us little pause."  Saxena, 229 F.3d at 6.

On the other hand, we have acknowledged that certain factual "omission[s], helpful to the defendant," may be "an implicit part of the bargain" in a plea agreement.  United States v. Yeje-Cabrera, 430 F.3d 1, 28 (1st Cir. 2005).  In Gonczy, for example, we held that a prosecutor breached a plea agreement when he began a sentencing argument by recommending a sentence according to the plea agreement, but then went on to say that the "defendant was the brains behind [the] operation," that "his conduct ruined many lives," that the "defendant basically laughed in the face of law enforcement," and that "the defendant at a minimum deserves what the guidelines provide for and those are his just deserts." 357 F.3d at 53-54 (internal quotation marks omitted).  In sum, the government's "solemn duty to uphold forthrightly its end of any bargain that it makes in a plea agreement, and its equally solemn duty to disclose information material to the court's sentencing determinations . . . . admittedly can tug in different directions." Saxena, 229 F.3d at 5 (citations omitted).

The precise terms of the plea agreement in this case help resolve these competing tugs. The agreement does not limit the information that the prosecutor can convey. Rather, it limits the purpose of her remarks: no enhancement above the agreed level "shall be sought." Such a prohibited purpose plays no causal role when a prosecutor accurately answers a judge's query by citing objective facts responsive to the question, or rebuts factual assertions made by defense counsel. Conversely, when a prosecutor, as in Gonczy, gratuitously offers added detail garbed in implicit advocacy, a court might well find that the prosecutor is actually seeking a result in a manner that breaches the agreement.

In gauging the equilibrium struck by these competing tugs in this case, we observe first that the district court--not the prosecutor--raised the subject of the challenged enhancement based on its reading of the PSR. After defense counsel explained his view of the facts relevant to that inquiry, and in response to an apparent invitation by the court, AUSA Castellón explained in non-argumentative terms her knowledge of the basis for the PSR's recommendation. Then, and without any verbal winks, AUSA Hernández twice voiced full support for including no enhancement.

Defense counsel's lack of objection in this context is less like an oversight that merely triggers plain error review,

and more like a real time acknowledgement that the prosecutor was responding forthrightly to the judge's inquiry, as was her duty, rather than seeking a result in breach of the agreement. Defense counsel was familiar with the terms of the agreement, the agreement was expressly mentioned, and counsel apparently secured a reiteration by the prosecutor of the government's commitment in order to eliminate any possible negative inference from its response to the discussion of the gun possession issue. In this context, it seems fair to say that the lack of objection was not a mistake by counsel in the face of a plain breach, but was instead a recognition by competent counsel that the agreement was not being breached at all.

Our rejection on plain error review of the claim that the prosecutor breached the plea agreement stands as well on the fact that the prosecutor's words very likely had no effect on the outcome. See Puckett, 556 U.S. at 141–42 (stating that a defendant who does not receive the benefits of his bargain due to the government's breach cannot prevail on the third prong of plain error review when "he likely would not have obtained those benefits in any event"); United States v. Olano, 507 U.S. 725, 734 (1993) (defendant "bears the burden of persuasion with respect to prejudice" on plain error review). In definitively announcing and

explaining his decision to adopt a two-level enhancement for possession of a firearm, the district court cited only the acknowledgement of the defendant and his counsel that, as described in the PSR, co-conspirators possessed guns, which the trial court thought was eminently foreseeable. Nothing the prosecutor said at the hearing even bore on the possession of guns by co-conspirators. Simply put, there is no non-speculative basis for concluding that Miranda would not have received the two-level enhancement but for the prosecutor's statement confirming her belief in the PSR's statement that Miranda himself had a gun.

For the foregoing reasons, Miranda's plea agreement argument fails.

## B.  The Firearms Enhancement

Miranda next challenges the merits of the district court's decision to impose the two-level enhancement under United States Sentencing Guidelines § 2D1.1(b)(1). Repeating the argument that he made in the district court, Miranda contends that the evidence was too sparse and insufficiently corroborated to establish the type of foreseeable gun possession that would support the enhancement. We review the district court's factual findings at sentencing for clear error, and we give due deference to its application of the sentencing guidelines to the facts. United

States v. Carrero-Hernández, 643 F.3d 344, 349 (1st Cir. 2011).

Section 2D1.1(b)(1) applies when a dangerous weapon was possessed during the course of a drug trafficking offense. "To warrant the enhancement, the defendant does not need to have possessed the weapon [himself] or even to have known about it, it just must be reasonably foreseeable that a co-conspirator would possess a weapon in furtherance of the criminal activity." United States v. Greig, 717 F.3d 212, 219 (1st Cir. 2013). If the government satisfies its initial burden of establishing that the defendant or his co-conspirator possessed a weapon during the offense, the defendant may avoid application of the enhancement if he can show that it is "clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. 11(A); United States v. Anderson, 452 F.3d 87, 90–91 (1st Cir. 2006). And we have often observed that "firearms are common tools" in drug trafficking conspiracies involving large amounts of drugs such as the two in which Miranda admits he participated. United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991).

After hearing argument at the sentencing hearing, the district court found that it was "foreseeable that dangerous weapons, including firearms, would be possessed during the drug trafficking conspiracy." In support of this finding, the district

court referred to defense counsel's acknowledgment that co-conspirators possessed firearms as described in the PSR. The stipulated version of the facts in the plea agreement also reflected that, with respect to each indictment, Miranda and his co-conspirators engaged in transactions for a thousand or more kilograms of cocaine at a time. Finally, Miranda did not object to allegations in the PSR that enforcers in the organization used guns to protect the organization's members and its proceeds.

Without clearly specifying which of these facts he is challenging, Miranda argues that the district court lacked a sufficient evidentiary basis to impose the firearm enhancement because the evidence was "inherently suspect," "insufficiently corroborated," and "quantitatively sparse." Using the above-described precedent as our guide, however, we easily conclude that there was no error in the district court's decision to impose the enhancement. Based on the evidence the district court had at its disposal, it is unsurprising that, as stipulated in the plea agreement, officers discovered a pistol hidden in a vehicle driven by Miranda's co-conspirator at the scene of one of the drug transactions, and that a pistol was seized from the vehicle of another co-conspirator two days later.

Miranda makes a last-ditch effort at vacating the enhancement by stating that "[t]he finding cannot be based on foreseeability related to a leadership role, as was asserted in the PSR, because the judge at sentencing expressly denied that recommendation." While evidence that a defendant served as a conspiracy's leader might support the conclusion that he could have reasonably foreseen the activities (including possession of a firearm) undertaken by his co-conspirators, such a finding is certainly not a categorical prerequisite for creating a reasonable probability that possession of a firearm was foreseeable. Here, irrespective of whether Miranda led the conspiracy, he has failed to show that it was clearly improbable that the firearms he and his co-conspirators possessed were connected to the drug conspiracies.

## III.  Conclusion

The judgment of the district court is <u>affirmed</u>.