# United States Court of Appeals
## For the First Circuit

Nos. 22-1204
    22-1205

UNITED STATES OF AMERICA,

Appellee,

v.

YAVIER MOJICA-RAMOS,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Hamilton,[*] and Rikelman
Circuit Judges.

Kevin E. Lerman, Research & Writing Attorney, with whom Héctor L. Ramos-Vega, Interim Federal Public Defender, Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo were on brief, for appellant.

E. Giovannie Mercado, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

---

[*]     Of the Seventh Circuit, sitting by designation.

June 6, 2024

**MONTECALVO, Circuit Judge**. In July 2021, defendant-appellant Yavier Mojica-Ramos ("Mojica") entered into a plea agreement under which he promised to plead guilty to unlawfully possessing two machineguns in violation of 18 U.S.C. § 922(o) while he was serving a five-year term of federal supervised release. For its part, the government agreed to recommend a within-guidelines sentence for the § 922(o) charge.

Despite the parties' recommendations, the district court ultimately imposed two upwardly variant sentences: (1) a seventy-two-month sentence for Mojica's § 922(o) charge and (2) a sixty-month statutory maximum revocation sentence to run consecutively to Mojica's § 922(o) sentence.

For the reasons below, we find that the prosecutor's sentencing advocacy did not conform to the most meticulous standards of performance required by Mojica's entrance into the plea agreement. To remedy the prosecutorial breach, we must vacate Mojica's § 922(o) and revocation sentences, and we remand the underlying cases for resentencing before a different judge.

## I. Background[1]

In May 2018, Mojica began a five-year term of supervised release after serving a five-year sentence for possession of a firearm in furtherance of drug trafficking, a felony under 18 U.S.C. § 924(c)(1).

On October 23, 2020, undercover Puerto Rico Police Bureau officers were monitoring for violations of a COVID-19 executive order that required wearing facemasks in public places. The officers saw Mojica walk into a hair salon without donning a facemask and called for backup. Multiple officers and a firearm-sniffing dog arrived at the salon, and the dog positively alerted to a shoulder bag that the officers saw Mojica carrying. The officers searched the bag and discovered two Glock pistols that had been modified to be machineguns, sixty-two rounds of ammunition, a plastic bag containing marijuana, and a white oval pill.

On July 28, 2021, Mojica signed a plea agreement under which he promised to plead guilty to unlawful possession of the two modified machineguns in violation of 18 U.S.C. § 922(o). The plea agreement required the parties to request a sentence within

---

[1] Our recitation of facts is derived from the undisputed portions of the presentence report, the plea agreement, and the transcripts of the § 922(o) and revocation sentencing hearings. See United States v. Colón-Cordero, 91 F.4th 41, 45 (1st Cir. 2024).

the guidelines range after Mojica's criminal history category ("CHC") was confirmed. The guidelines range for the § 922(o) charge was later calculated without dispute as thirty-seven to forty-six months based on Mojica's CHC category of III. One week later, on August 5, 2021, Mojica pled guilty to the § 922(o) charge.

## A. The Government's Sentencing Memorandum

Before Mojica's sentencing for the § 922(o) charge, the government filed its sentencing memorandum requesting an upper-end guidelines sentence of forty-six months. Notably, the government attached approximately 250 photos and a video extracted from Mojica's cellphone as support for its sentencing request. The photos depicted numerous firearms and large quantities of drugs, and the video allegedly showed "an individual resembling [Mojica] . . . recklessly brandishing an assault-style rifle by repeatedly pointing the barrel at the individual who is recording the video."

The government summarized that these photos and the video "are additional evidence that [Mojica] has an interest in, and likely participates in, other criminal behavior beyond the machinegun count charged." Relying on this "alarming content," the government called Mojica "an individual with a penchant for high-capacity firearms, drugs, and criminal activity." Likewise, it labeled Mojica as having an "affinity for high-capacity firearms" and an "apparent infatuation with firearms." The

- 5 -

government then urged the court to consider the cellphone content as "additional information" on Mojica's criminal tendencies at sentencing.

The government's sentencing memorandum also elaborated on the dangerousness of machineguns and its belief that the images from Mojica's phone "suggest" his "participat[ion] in other criminal activity involving high-capacity, high-powered weapons of war." The government specifically stated that "[t]he danger to the community and the serious nature of the offense should be considered exceptional in this case." Furthermore, the government highlighted high rates of gun violence in Puerto Rico, the purported deterrent effect of lengthy sentences for gun offenders, and the "particularly strong" need to protect the public from Mojica.

### B. Mojica's Motion to Compel Specific Performance

In response to the government's sentencing memorandum, Mojica filed a motion to compel specific performance of the plea agreement. Mojica alleged that the government breached the plea agreement by impliedly advocating for an upwardly variant sentence through its sentencing memorandum, and he requested that the court order specific performance and transfer the case to another judge for sentencing. The government opposed the motion to compel, arguing that it was required "to share with the [c]ourt information relevant to the imposition of a sentence," and highlighted the

need to "contextualize[] the offense to which [Mojica] recently pleaded guilty."

After the motion to compel was fully briefed, the district court issued an opinion and order denying Mojica's motion. The court rejected Mojica's contention that the government had "no . . . obligation" to provide the court with his cellphone content. The court also agreed with the government that the photos and video demonstrated Mojica's "affinity for the unlawful possession of firearms and controlled substances," which "suggests a lack of respect for the law and a threat to public safety." Furthermore, the court concluded that the government had no duty to authenticate the images before submitting them as part of its sentencing memorandum. Lastly, the court did not find the government's references to the case being "exceptional" to be violative of the plea agreement.

Mojica filed a motion for reconsideration, which the court denied on largely the same grounds. But unlike in its initial order denying the motion to compel, the court's order on reconsideration suggested its acceptance of the cellphone images as bearing sufficient indicia of reliability. The court validated the "inference" that Mojica saved the images on his phone, as "[t]his evidence did not spontaneously appear on his device," and concluded that he "does, indeed, have an affinity for firearms." Moreover, because Mojica pled guilty to the machinegun possession

charge, the court adopted the government's position that "it logically follows that the nature of Mojica's affinity for firearms is insidious."

## C. The § 922(o) Sentencing Hearing

On February 28, 2022, the court held a sentencing hearing for the § 922(o) charge. Mojica's counsel detailed the pertinent mitigating factors and requested a thirty-seven-month sentence, the bottom of the guidelines range.

After Mojica's counsel advocated for a thirty-seven-month sentence, the government stated that it "stand[s] by its recommendation made in the plea agreement," and noted that it "is entitled to request a sentence at the upper end" of the guidelines range. The government then formally requested a top-of-guidelines sentence of forty-six months. Immediately thereafter, the government discussed how Mojica's offense was "part of a broader problem here in Puerto Rico where, frankly speaking, armed violent crime is a disease." The government cited statistics of exceptionally high murder rates in Puerto Rico, and it specifically commented that Mojica's recidivism and "possession of loaded machine guns" constituted "an even bigger part of the problem" than the possession of firearms generally. The government concluded its argument by reiterating its request for a forty-six-month sentence.

In issuing the sentence, the court rejected the parties' recommendations for a guidelines sentence and imposed an upwardly variant seventy-two-month sentence.[2] Mojica's counsel objected to the sentence as procedurally and substantively unreasonable. And in particular, he incorporated by reference Mojica's prior objection to prosecutorial breach raised in his motion to compel specific performance.

### D. The Revocation Sentencing

Immediately following the § 922(o) sentencing, the district court held a supervised release revocation hearing and issued Mojica's revocation sentence. The guidelines range for the revocation sentence was calculated without dispute as twenty-four

---

[2] As part of its sentencing explanation, the court described machineguns as "dangerous and unusual weapons." The court then invoked the Supreme Court's decision in Kimbrough v. United States, 552 U.S. 85 (2007), and stated its disagreement "with the Sentencing Commission's low guideline range in machine gun cases" before asserting that the guidelines "do not take into account the amount of ammunition or high-capacity magazines possessed by a defendant" in a § 922(o) case. In addition, the court noted its consideration of "the serious and acute problem of gun violence in Puerto Rico," and statistics purportedly demonstrating that "firearms offenders recidivate at a higher rate and more quickly than non-firearms offenders." Along with summarizing Mojica's background and the offense conduct, the court referenced Mojica's prior offense (which also involved possession of firearms and ammunition), his "total disregard for the law," and lack of rehabilitation as warranting an upwardly variant seventy-two-month sentence. Because we focus on Mojica's prosecutorial breach claim as the primary basis for his challenge to the § 922(o) sentence, we do not address the propriety or sufficiency of the court's explanation for issuing its upwardly variant sentence.

to thirty months. Mojica's counsel requested a twenty-four-month sentence to run concurrently with the seventy-two-month § 922(o) sentence. The government reiterated the dangerousness of machineguns and Mojica's "callousness for the rules," requesting a thirty-month consecutive revocation sentence.

The court revoked Mojica's supervised release and reexplained the offense conduct. Before issuing the sixty-month statutory maximum revocation sentence, the court cited "the seriousness of the violations," Mojica's lack of "respect for the law," Mojica's failure to "perform[] pro-social activities that could have had a positive impact on his rehabilitation," and how "the original sentence did not serve the objective of punishment or deterrence" as the bases for imposing a significant upward variance. Mojica's counsel objected to the sentence as procedurally and substantively unreasonable, specifically referencing that Mojica opposed the court's decision to upwardly vary.

In total, the court sentenced Mojica to eleven years of incarceration -- seventy-two months for the § 922(o) charge, followed by a sixty-month consecutive revocation sentence. Mojica then filed these timely appeals.

## II. Discussion

### A. Mojica's Prosecutorial Breach Claim

"If a proper objection is brought before the district court, breaches of plea agreements present questions of law for plenary review." United States v. Gonczy, 357 F.3d 50, 52 (1st Cir. 2004). Mojica has preserved his prosecutorial breach claim by raising in-depth objections in his motion to compel specific performance and reraising the objection after the § 922(o) sentence was issued.[3] We thus review his claim de novo.

---

[3] The government agrees that Mojica has preserved his prosecutorial breach claim to challenge his § 922(o) sentence. But Mojica insists that the government's conduct in advocating for a high-end revocation sentence should also be considered as part of its breach of the plea agreement for the § 922(o) charge. The government correctly points out that the plea agreement did not make any mention of the revocation proceedings, and Mojica has not identified any cases suggesting that the government's statements related to the revocation sentence can be imputed as prosecutorial breach of the § 922(o) plea agreement. We therefore cabin our prosecutorial breach analysis to the government's sentencing advocacy for the § 922(o) charge.

Relatedly, for the first time in his reply brief, Mojica argues that the plea agreement language bound the parties to advocate for the same within-guidelines sentence for the § 922(o) charge. "[A]rguments raised for the first time in an appellate reply brief [are] ordinarily deemed waived," United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016), unless the appellant raised the argument in a reply because it was the "earliest point when it was logical to do so," Holmes v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012). Mojica had every opportunity and reason to raise this argument sooner; he also never objected below to the government's repeated representations that the plea agreement allowed it to seek a high-end guidelines sentence. We see no reason to excuse waiver here, and we will not evaluate whether the plea agreement required the parties to request the same § 922(o) sentence.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). And because "[a] defendant who enters into a plea agreement waives a panoply of constitutional rights[,] . . . we hold prosecutors to 'the most meticulous standards of both promise and performance.'" United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014) (quoting United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002)). "Such standards require more than lip service to, or technical compliance with, the terms of a plea agreement." Id. Where a defendant alleges that a prosecutor breached a plea agreement, "[w]e consider the totality of the circumstances in determining whether a prosecutor engaged in impermissible tactics." Id. at 91.

At the outset, the government heavily relies on its technical compliance with the plea agreement as assurance that it did not breach the agreement. To be sure, the government irrefutably abided by its obligation to ask for a sentence "within the applicable Guidelines range" and never explicitly requested an above-guidelines sentence.

Beyond recognizing that the government technically complied with the agreement by recommending a within-guidelines sentence, however, we cannot validate the government's "overall

- 12 -

conduct" as "reasonably consistent with making such a recommendation, rather than the reverse." United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992). Here, the government presented the court with approximately 250 photos of firearms and drugs and an unanalyzed video of an individual "resembling" Mojica to offer "additional evidence" of his "likely" participation in "other criminal behavior beyond the machinegun count charged." And even more problematically, the government told the court that the offense and Mojica's dangerousness "should be considered exceptional."

To defend its submission of the cellphone content and its characterization of Mojica's conduct, the government points to its obligation to provide "relevant facts" for the court's sentencing considerations. We have acknowledged the difficulty in "reconcil[ing] competing centrifugal and centripetal forces: the prosecution's solemn duty to uphold forthrightly its end of any bargain that it makes in a plea agreement, and its equally solemn duty to disclose information material to the court's sentencing determinations." United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000) (citations omitted). In that vein, we have consistently safeguarded the prosecutor's right and obligation to "accurately answer[] a judge's query by citing objective facts responsive to the question, or rebut[] factual assertions made by defense counsel." United States v. Miranda-Martinez, 790 F.3d 270, 275

- 13 -

(1st Cir. 2015). Similarly, where the government becomes aware of information that has "an easily discernible relationship to the offense conduct," it must disclose those facts to the sentencing court. Saxena, 229 F.3d at 6; see also United States v. Ubiles-Rosario, 867 F.3d 277, 288 (1st Cir. 2017).

But a prosecutor is not free to present this information to the court in ways that subvert the plea agreement's "limits [on] the purpose of [their] remarks." Miranda-Martinez, 790 F.3d at 275. For example, "when a prosecutor . . . gratuitously offers added detail garbed in implicit advocacy, a court might well find that the prosecutor is actually seeking a result in a manner that breaches the agreement." Id. A prosecutor also may not discharge their plea obligations in an "impermissibly equivocal, apologetic, or begrudging" manner. United States v. Davis, 923 F.3d 228, 239 (1st Cir. 2019). Put differently, a prosecutor may not use their duty of candor "as an instrument for thwarting" their plea agreement obligations. Saxena, 229 F.3d at 6.

Even if we accept the government's contention that its duty of candor compelled it to disclose the photos and video, it made several serious and unacceptable missteps in presenting this information to the court. First, the government's characterization of the offense and Mojica's dangerousness as "exceptional" violated the plea agreement's mandate that it request a within-guidelines sentence. The government did not

- 14 -

address its description of the case as "exceptional" in its briefing before this court. But when asked about this conspicuous omission at oral argument, the government responded that depicting the conduct as "remarkable" or "really bad" by using the word "exceptional" should not be read as implicitly recommending an upward variance. Instead, the government insisted that calling Mojica's conduct "exceptional" was appropriate given the government's request for a high-end guidelines sentence.

We disagree. As the government is well aware, courts may issue upwardly variant sentences where "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply." Rita v. United States, 551 U.S. 338, 351 (2007). Where the offense involves "idiosyncratic facts," United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020), or "especially heinous" conduct, United States v. Rivera-Morales, 961 F.3d 1, 19 (1st Cir. 2020), a court may impose an upward variance to account for the fact that the guidelines' "heartland" merely contemplates a typical or "mine-run" case, see United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014). Calling the offense "exceptional" -- especially in a sentencing memo that repeatedly underscored Mojica's "penchant" for crime and "infatuation with firearms" -- implied that the government saw Mojica's case as falling outside the guidelines' heartland. Similarly, during the sentencing hearing, the government referred

to Mojica's conduct as "a big part of the problem" of violent crime in Puerto Rico.

Although the government was permitted to explain its rationale for a high-end guidelines sentence, see United States v. Irizarry-Rosario, 903 F.3d 151, 155 (1st Cir. 2018), here, the government went beyond presenting pertinent information in an objective manner to gratuitously framing Mojica's case as exceptional or extraordinary. Nor was this information presented in response to Mojica's sentencing advocacy or the court's questioning. The government thus impermissibly signaled to the court that Mojica should be subject to greater punishment than it had promised in agreeing to recommend a within-guidelines sentence. See Canada, 960 F.2d at 271 (finding breach where "the government's efforts seemed directed at encouraging a higher sentence than the one to which it had agreed"); United States v. Clark, 55 F.3d 9, 12-13 (1st Cir. 1995) (finding breach where the government "suggest[ed] that it thought no [sentencing] adjustment was appropriate" when the plea agreement prohibited it from opposing the adjustment); United States v. Cortés-López, 101 F.4th 120, 129, 133 (1st Cir. 2024) (finding breach where the government's "unsolicited statement" indicating that "the plea agreement included an inaccurate guidelines calculation" was "tantamount to a repudiation of the agreement").

Second, and relatedly, the government was not "merely drawing facts and law to the court's attention," Clark, 55 F.3d at 13, when it encouraged the court to consider the photos and video as "additional evidence" of Mojica's "likely" participation in other unproven criminal conduct. We have repeatedly explained that "a sentencing court may not rely upon a defendant's prior arrests or unproven charges in fixing a sentence, unless there is proof by a preponderance of the evidence that the defendant engaged in the underlying conduct alleged." United States v. Rivera-Ruiz, 43 F.4th 172, 181–82 (1st Cir. 2022) (collecting cases).

But if proven by a preponderance of the evidence, uncharged criminal conduct can be "offered to demonstrate [the defendant's] under-represented criminal history score . . . or his history and characteristics, under § 3553(a)," allowing the sentencing court to "'infer unlawful behavior' from such conduct to be factored into sentencing." Id. at 182 n.6 (quoting United States v. Colón-Maldonado, 953 F.3d 1, 9 (1st Cir. 2020)). In other words, when sufficient proof exists, a sentencing court may upwardly vary from the guidelines by relying on uncharged conduct. See, e.g., United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012); United States v. Rodríguez-Reyes, 925 F.3d 558, 565-66 (1st Cir. 2019).

The government's duty of candor does not allow it to goad the court into relying on uncharged conduct without providing

any corroborating evidence that Mojica was involved in the alleged firearm and drug crimes depicted in the cellphone content. Aside from stating that the images were extracted from Mojica's phone, the government did not attempt to demonstrate by a preponderance of evidence that Mojica was involved in the purported crimes. And none of the images definitively portrayed Mojica as a perpetrator. In fact, the government concedes that it did "not submit[] evidence to support" finding that "any [of the] substances depicted in the photos" were actually illegal drugs, "any guns were used in connection with drug trafficking or any other crimes," or that Mojica "physically possessed" any of the pictured drugs or guns.

In addition, during oral argument, the panel pressed the government on its failure to professionally analyze the cellphone video to identify Mojica, and the government made no effort to refute this concern. Rather, the government maintained that it was proper to suggest to the court that Mojica was depicted in the video after "multiple people" viewed the video and agreed the person holding the gun resembled him.[4]

---

[4] For purposes of assessing prosecutorial breach, we also reject the government's contention that, because the district court did not explicitly indicate its reliance on the cellphone content at sentencing, Mojica's concern over the reliability of the photos and videos is a "red herring." In reviewing a preserved prosecutorial breach claim, "[w]hether or not the sentencing judge was actually influenced by the Assistant United States Attorney's actions is not a material consideration." Canada, 960 F.2d at 271.

Therefore, in full context of its sentencing advocacy, the government's insistence that the court consider unproven conduct -- seemingly under the guise of identifying public safety and deterrence issues -- further signaled to the court that the prosecutor did not genuinely believe the recommended guidelines sentence was appropriate. Indeed, in so doing, the government suggested a basis for the court to upwardly vary while neglecting our sentencing caselaw's limitations on considering uncharged conduct.

We recognize that the government was undoubtedly authorized to explain its rationale for a high-end guidelines sentence without "sugarcoat[ing] the facts." Almonte-Nuñez, 771 F.3d at 91. But despite telling the court that it was requesting a within-guidelines sentence, under the totality of circumstances here, "the substance of the prosecutor's argument . . . can only be understood to have emphasized [Mojica's] wrongdoing . . . , advocating for the imposition of a higher sentence than [an] agreed-upon [guidelines] term." Gonczy, 357 F.3d at 53. By effectively "urging the court to impose a lengthy sentence within a context suggesting that [they] had in mind something greater than" the within-guidelines sentence the parties agreed upon, Canada, 960 F.2d at 270, the prosecutor wrongfully undermined the plea agreement. Accordingly, we vacate Mojica's § 922(o) sentence based on the government's plea agreement breach.

## B. Remedy for Prosecutorial Breach

Having concluded that the prosecutor breached the plea agreement, we must consider the appropriate remedy. In addition to vacating his § 922(o) sentence, Mojica also asks us to vacate his revocation sentence. He further requests that we order the district court to reduce both sentences to the low end of the respective guidelines ranges and mandate that the sentences run concurrently.

We begin with whether to vacate Mojica's revocation sentence based on the government's breach. Here, the revocation proceedings began immediately after the § 922(o) sentencing concluded. Mojica contends that but for the government's breach of the § 922(o) plea agreement, the district court would not have been predisposed to believe "that [Mojica] was somehow linked to violent crime and drug trafficking" when it commenced the revocation proceedings. And indeed, after Mojica's counsel reraised his objection to the reliability of the cellphone data at the start of the revocation sentencing, the government continued to insist on the propriety of submitting the cellphone content. In particular, the government informed the court that it had timely produced the extraction metadata to Mojica's counsel and the video purporting to show Mojica brandishing the gun was taken approximately one month before Mojica was arrested for the § 922(o) charge.

The government is correct that it did not agree to recommend any particular sentence at the revocation sentencing. We also recognize that the revocation sentencing constituted a separate proceeding implicating different punitive concerns than Mojica's § 922(o) sentence. But at bottom, we "really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge." United States v. Alcala-Sanchez, 666 F.3d 571, 577 (9th Cir. 2012). Here, the same sentencing judge imposed a statutory-maximum revocation sentence on the heels of the § 922(o) sentencing. Though we do not "question the fairness of the sentencing judge," as "the fault here rests on the prosecutor," we must craft a remedy that properly corrects the government's error. Santobello, 404 U.S. at 263. Given our broad discretion to shape remedies for prosecutorial breach, Clark, 55 F.3d at 14, we thus vacate Mojica's revocation sentence.

Although we have vacated and remanded a sentence "with instructions to impose a specific sentence in order to achieve specific performance of [a plea] agreement," we have cautioned that such a "remedy is extraordinary, however, depriving the trial court of its discretion in sentencing." United States v. Kurkculer, 918 F.2d 295, 299 (1st Cir. 1990). Mojica's preferred remedy does not bind us. See Canada, 960 F.2d at 271 ("The choice of remedy rests with the court and not the defendant"). We

- 21 -

decline to remand with orders to impose particular sentences, but rather, "in accordance with our normal practice" upon finding prosecutorial breach, we remand the § 922(o) and revocation sentences for resentencing before a different judge. United States v. Mercedes-Amparo, 980 F.2d 17, 20 (1st Cir. 1992); accord Clark, 55 F.3d at 15; United States v. Velez Carrero, 77 F.3d 11, 12 (1st Cir. 1996); Canada, 960 F.2d at 271.

## III. Conclusion

For the foregoing reasons, we vacate Mojica's § 922(o) sentence and revocation sentence. We remand his cases for resentencing in both matters before a different judge.[5]

---

[5] At oral argument and in a Rule 28(j) letter, Mojica's counsel identified that the guidelines were recently amended, and such changes took effect on November 1, 2023. Mojica's counsel suggests that based on Amendment 821 (which the Commission has designated as applying retroactively starting on February 1, 2024, see U.S. Sent'g Guidelines Manual § 1B1.10(a), (d) (U.S. Sent'g Comm'n 2023)), Mojica's CHC should be lowered; and correspondingly, the guidelines range for the § 922(o) charge should be reduced to thirty-three to forty-one months. We do not purport to recalculate Mojica's CHC or guidelines range on appeal, but we respectfully advise the district court tasked with resentencing to consider the effect of any pertinent retroactive amendments on Mojica's guidelines ranges.