# United States Court of Appeals
## For the First Circuit

No. 22-1650

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR MALDONADO-MALDONADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Gelpí, Lipez, and Rikelman,
Circuit Judges.

José David Rodríguez, Research & Writing Specialist, with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, Héctor L. Ramos-Vega, Interim Federal Public Defender, District of Puerto Rico, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for appellant.

Julia M. Meconiates, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

April 11, 2025

**RIKELMAN**, **Circuit Judge**. In this sentencing appeal, the government forthrightly concedes that it breached its plea agreement with Héctor Maldonado-Maldonado ("Maldonado"). It also admits that, as a result, we should vacate Maldonado's sentence. We agree with the parties that, even under the plain error standard that applies here, Maldonado has established that he is entitled to resentencing because of the government's breach.

## I. BACKGROUND[1]

### A. Relevant Facts

In August 2020, Maldonado and one of his cellmates, Miguel Santana-Avilés ("Santana"), were involved in an altercation with a senior corrections officer (SCO) at the Metropolitan Detention Center Guaynabo (MDC), where Maldonado was serving a term of imprisonment. As the SCO was conducting a routine lockdown procedure, he realized that Maldonado was not in his cell and called out for him to return. The SCO also observed that the cell contained a contraband item (an extra pillow). He removed the pillow and walked out of the cell. At that point, Maldonado ran back to his cell, yelling profanities at the SCO. When Maldonado arrived, he punched the SCO in the face. Santana then grabbed the

---

[1] Because this appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the unobjected-to portions of the Presentence Investigation Report, and the transcript of the sentencing hearing. See United States v. Colón-Cordero, 91 F.4th 41, 45 (1st Cir. 2024).

SCO from behind and held his arms.  When the SCO tried to extricate himself, Maldonado put him in a headlock and continued to punch his face, head, and neck.  Other corrections officers quickly arrived, pepper-sprayed both prisoners, and broke up the fight.

The SCO received medical treatment at MDC and was subsequently transferred to the hospital for further evaluation and treatment but was released after receiving medication.  As a result of the attack, the SCO sustained bodily injuries including contusions to the face, ear, and hand.  He also experienced pain "during and after the assault" and recurring headaches, which persisted until at least March 2022.

**B. Procedural History**

**1. The Plea Agreement**

Following these events, Maldonado and Santana were indicted and charged with assaulting, resisting, or impeding a federal officer.  See 18 U.S.C. § 111(a)(1), (b).  Maldonado entered into a plea agreement, while Santana proceeded to trial.[2]

In the plea agreement, Maldonado and the government proposed a sentencing calculation that resulted in a Total Offense

---

[2] Santana was found guilty by the jury of "aiding and abetting, knowingly . . . forcibly assault[ing], imped[ing], intimidat[ing], or interfer[ing] with an officer of the United States while engaged in or on account of the performance of official duties."  United States v. Santana-Avilés, 120 F.4th 7, 10 (1st Cir. 2024).  He later appealed his conviction based on alleged evidentiary issues at trial.  We rejected his arguments and affirmed his 87-month prison sentence.  See id. at 10, 14.

Level (TOL) of 13 under the United States Sentencing Guidelines. See U.S. Sent'g Guidelines Manual §§ 2A2.4, 3E1.1 (U.S. Sent'g Comm'n 2021) [hereinafter "U.S.S.G."]. The parties arrived at this TOL as follows: a Base Offense Level (BOL) of 10 for "[o]bstructing or [i]mpeding [o]fficers" pursuant to section 2A2.4(a);[3] a three-point enhancement pursuant to section 2A2.4(b)(1) because the "offense involved physical contact"; a two-point enhancement pursuant to section 2A2.4(b)(2) because the "[v]ictim sustained bodily injury"; and a two-point reduction for acceptance of responsibility pursuant to section 3E1.1(a). The parties did not stipulate to a criminal history category (CHC) for Maldonado, but the plea agreement reflected that the guideline sentencing range for an individual with CHC III would be 18-24 months.

The agreement also included a three-page stipulation of facts describing the assault and the SCO's injuries. The stipulation of facts did not mention that the SCO had any difficulty breathing during the assault or elaborate upon Maldonado's intent in putting the SCO in a headlock.

---

[3] A BOL calculation under section 2A2.4 "incorporates the fact that the victim was a governmental officer performing official duties." U.S.S.G. § 2A2.4(a) cmt. n.2.

## 2. The Presentence Investigation Report

Following Maldonado's guilty plea, the probation officer prepared a Presentence Investigation Report (PSR). The PSR included a markedly different guidelines calculation than the calculation set out in the plea agreement. All told, the PSR applied a 14-point "aggravated assault" BOL, thirteen points of enhancements (many of which were not available under the plea agreement's terms), and three points of reductions, for a TOL of 24.

In preparing the PSR, the probation officer relied on facts presented at Santana's trial, which were not included in the stipulation of facts in the plea agreement. Critically, these facts led the probation officer to apply a different -- and more punitive -- sentencing guideline than the one that the parties had specified in their agreement. Referencing the SCO's testimony at Santana's trial, the probation officer determined that "the evidence [showed] that by placing the victim in a headlock, [Maldonado] intentionally, knowingly, or recklessly impeded the normal breathing . . . of the victim." She thus concluded that Maldonado had "strangl[ed]" or "attempt[ed] to strangle" the SCO, and therefore applied the "aggravated assault" guideline, section 2A2.2(a), via the cross-reference at section 2A2.4(c)(1). See U.S.S.G. § 2A2.2 cmt. n.1. Applying the "aggravated assault" guideline led her to recommend a BOL of 14.

The probation officer also recommended three additional sentencing enhancements that were available under the "aggravated assault" guideline but not the "impeding officers" guideline contemplated by the plea agreement. To start, she added a six-point "Official Victim" enhancement. Id. § 3A1.2(c)(2); see also id. § 3A1.2 cmt. n.4(A) (explaining that the enhancement applies "in circumstances tantamount to aggravated assault"). She also added another two-point enhancement related to the SCO's status as a federal officer. See id. § 2A2.2(b)(7) (enhancement for assaulting a federal officer under 18 U.S.C. § 111). And she added a further two-point enhancement because the SCO had been "physically restrained." Id. § 3A1.3.

The PSR, like the plea agreement, also included a "bodily injury" enhancement. See id. § 2A2.2(b)(3)(A). However, the PSR's three-point "bodily injury" enhancement was one point higher than the similar enhancement calculated under the plea agreement's recommended guideline. Nevertheless, the probation officer did not recommend an enhancement for "serious bodily injury," even though it was available under the "aggravated assault" guideline she had applied. Finally, the probation officer also applied a three-point reduction for Maldonado's acceptance of responsibility. See id. § 3E1.1(a)-(b).

Maldonado submitted timely objections to the PSR. In particular, he objected to the probation officer's use of the

"aggravated assault" guideline to calculate his BOL. He explained that "the determination of whether or not an aggravated assault took place requires the court to find facts [that] Mr. Maldonado disputes and [to which he] has not stipulated." He also explained that the SCO had raised accusations of strangulation for "the first time" at Santana's trial. Finally, he objected to the related enhancements the probation officer had included -- which were available only under the "aggravated assault" guideline -- based on the SCO's status as an "official" and the use of "physical[] restrain[t]." Maldonado reiterated these arguments in the sentencing memorandum that he filed in advance of the sentencing hearing.

### 3. The Government's Sentencing Memorandum

The government then filed its own sentencing memorandum. Like the PSR, the government's sentencing memorandum relied on the SCO's testimony at Santana's trial. Citing that testimony, the government described Maldonado's conduct as a "vicious assault" that resulted in "physical and prolonged emotional injuries" to the SCO. It explained that there was a "paramount" need to deter Maldonado from future "assaultive behavior." The government

- 8 -

concluded its memorandum by requesting a sentence of 24 months, the upper end of the range in the plea agreement.

### 4. The Sentencing Hearing

The district court held a sentencing hearing on August 4, 2022. The prosecutor began the hearing by deviating from the guidelines calculation set out in the plea agreement and the government's own sentencing memorandum. Specifically, the prosecutor argued for a "level four enhancement for th[e] bodily injury" sustained by the SCO, which he contended met the "serious bodily injury" standard in the "aggravated assault" guideline used in the PSR. See U.S.S.G. § 2A2.2. Importantly, however, the "serious bodily injury" enhancement was not available under the "impeding officers" guideline specified in the plea agreement. See id. § 2A2.4. Maldonado therefore objected to the "serious bodily injury" enhancement and advocated instead for a lower enhancement for "bodily injury" only.[4] The district court declined to apply the four-point "serious bodily injury" enhancement and determined that a three-point enhancement was appropriate.

The district court then asked about Maldonado's objection to the discrepancy between the 10-point BOL in the plea agreement and the 14-point BOL in the PSR. Defense counsel

---

[4] The plea agreement contained a two-point enhancement for "bodily injury." But at the sentencing hearing, defense counsel seemed to agree with the court that a three-point bodily injury enhancement was appropriate.

- 9 -

explained that there were "no statements, no other behavior, [and] no other circumstantial evidence" on the record as to Maldonado's intent to strangle or otherwise impede the SCO's breathing -- and so the "aggravated assault" guideline and its associated 14-point BOL were inapplicable. The district court disagreed. It concluded that, after considering the evidence introduced at trial, the "aggravated assault" guideline was warranted.

After Maldonado's allocution, the district court asked to hear from the prosecutor once more. The prosecutor proceeded to describe the assault as "exceedingly dangerous," "extraordinary," and "intentional, aggressive, violent, [and] heinous." He also described Maldonado as "inherent[ly] dangerous[]," which he said was "a statement that is completely supported by the evidence in this case." Finally, he concluded that "to the extent that there are factual inconsistencies" between Maldonado's account and the government's, the court should be "the final arbiter of those facts." The prosecutor did not make any explicit recommendation as to the appropriate sentence but rather directed the court to the government's "position in" the sentencing memorandum it had previously filed.

The district court proceeded to adopt the PSR's sentencing guidelines calculation in full. It then sentenced Maldonado, based on a TOL of 24 and a CHC of III, to 78 months in

prison, the upper end of the PSR's sentencing guidelines range. He is currently set to be released on February 10, 2027.

Maldonado timely appealed his sentence.[5]

## II. DISCUSSION

Maldonado asks us to vacate his sentence for two separate reasons: (1) the prosecutor's breach of the plea agreement, and (2) the district court's reliance at the sentencing hearing on extra-record facts. Given the government's concession that a plea breach occurred, we do not reach Maldonado's second argument.

### A. Standard of Review

Because Maldonado "did not assert that the government breached the plea agreement during the sentencing proceedings, our review is for plain error." United States v. Acevedo-Osorio, 118 F.4th 117, 127 (1st Cir. 2024). Under the plain error standard, Maldonado must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Cheveres-Morales, 83 F.4th 34, 42-43 (1st Cir. 2023)).

---

[5] Although the plea agreement contained a waiver-of-appeal provision, the district court sentenced Maldonado above the agreed-upon range of 18-24 months. Thus, the waiver provision does not bar his appeal.

## B. Breach of the Plea Agreement

Maldonado contends that the government breached the plea agreement in four ways: (1) by advocating for a four-point sentencing enhancement for "serious bodily injury" when the plea agreement expressly contemplated only a two-point enhancement for "bodily injury"; (2) by "tacitly push[ing]" for the application of the aggravated assault guideline, given that the four-point "serious bodily injury" enhancement and the other enhancements recommended in the PSR were available only if that guideline applied; (3) by failing to affirmatively request an 18-24 month sentence; and (4) by failing to object to the PSR's recommended sentence. The government concedes that "looking at the [prosecutor's] holistic approach [and] overall performance," it breached the plea agreement.

We agree that the government breached the plea agreement and that its breach was clear and obvious, satisfying the first two prongs of the plain error standard. As we have explained, prosecutors are held to "the most meticulous standards of both promise and performance" in executing plea agreements. United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014) (quoting United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002)). "Such standards require more than lip service to, or technical compliance with, the terms of a plea agreement." Id. Thus, we have "prohibit[ted] not only explicit repudiation of the government's

assurances, but [also] . . . end-runs around them." <u>United States</u> v. <u>Canada</u>, 960 F.2d 263, 269 (1st Cir. 1992) (quotation marks and citation omitted).

As the government commendably acknowledges, "[b]y advocating for a greater ['serious bodily injury'] enhancement, the prosecutor undermined the benefit of the plea agreement." <u>See</u> <u>United States</u> v. <u>Matos-Quiñones</u>, 456 F.3d 14, 24 (1st Cir. 2006) ("A defendant is entitled . . . to the benefit of the bargain struck in the plea deal and to the good faith of the prosecutor." (cleaned up)). That advocacy plainly ran afoul of the parties' plea deal because, as the government explains, "the guideline proposed in the plea agreement did not [permit] a four-level enhancement for injury." Thus, with its request for this particular enhancement, "the prosecutor implicitly advocated for the use of the aggravated assault guideline." And the "aggravated assault" guideline opened the door to other sentencing enhancements, such as the six-point "Official Victim" enhancement, that contradicted the terms of the parties' agreement.

Further, the prosecutor described the assault as "extraordinary," "heinous," and "violent." As we have held, by using terms like "extraordinary" or "exceptional," the government "impermissibly signal[s]" that the defendant's case falls outside the "guidelines' heartland" or the "mine-run" of cases. <u>United</u> <u>States</u> v. <u>Mojica-Ramos</u>, 103 F.4th 844, 851-52 (1st Cir. 2024)

- 13 -

(quotation marks and citation omitted). So the prosecutor's language, coupled with the express request for the "serious bodily injury" enhancement, undermined the very basis for the sentence contemplated by the parties in the plea agreement. For these reasons, Maldonado is correct on his first two plea breach arguments, and the government does not contend otherwise.[6]

What is more, the government does not dispute that the cumulative errors we have described had a substantial effect on Maldonado's rights and impaired the fairness of his sentencing hearing. Thus, all four prongs of the plain error standard are met, and Maldonado is entitled to resentencing.

## C. Remedy

The parties disagree, however, on the scope of the remedy for the government's breach. The government contends that remanding to a different judge for resentencing is a sufficient and appropriate remedy. Maldonado, for his part, would have us remand to a different judge with specific instructions that the district court impose a sentence within the range provided by the plea agreement. But he is not entitled to such "extraordinary" relief. United States v. Kurkculer, 918 F.2d 295, 299 (1st Cir. 1990).

---

[6] The government nevertheless argues that Maldonado's third and fourth points do not make out claims for breach under our case law and thus do not provide "independent bases for remand."

To be sure, Maldonado is entitled to specific performance by the government of its promises in the plea agreement. And to its credit, the government has assured us that it will fulfill its obligations. At oral argument, it represented that "no [sentencing] argument" by it concerning "any aggravating factors would be relevant" on remand. It also acknowledged that the only way for it to adhere in "good faith" to the plea agreement would be for the prosecutor to recommend a sentence of 18-24 months. Acevedo-Osorio, 118 F.4th at 129. And given that Maldonado has already served 32 months, the government's anticipated recommendation for 18-24 months will amount to a request for a sentence of time served.

To the extent Maldonado contends that the government's breach entitles him to a specific sentence from the district court, however, we disagree.[7] The obligation of specific performance of the plea agreement runs against the government, not the district court. Further, the plea agreement did not bind the district court to adopt the parties' recommended sentencing range. See Fed. R. Crim. P. 11(c)(1)(A)-(B). Maldonado nevertheless argues that the only adequate remedy here would be a remand with directions to impose a sentence that results in his immediate release; that is

---

[7] Indeed, by signing the agreement, Maldonado bargained only for the "possibility that the judge could choose to act in accordance with the [agreement's] recommendation." Kurkculer, 918 F.2d at 299.

- 15 -

so, he claims, because he has already served more time in prison than the high end of the sentencing range specified in the plea agreement and thus has lost all "possibility" of receiving the sentence contemplated by the parties. Kurkculer, 918 F.2d at 299. But a decision on our part to exercise our equitable power to "depriv[e] the trial court of its discretion in sentencing" would be "extraordinary," and such an extraordinary remedy is only to be considered in the very rarest of circumstances. Id.; accord Mojica-Ramos, 103 F.4th at 854. Such circumstances are not present here.

Kurkculer, on which Maldonado relies to argue otherwise, is readily distinguishable.[8] There, the defendant strenuously objected during the sentencing hearing to the prosecutor's breach (and was penalized for his objections in the form of additional sentencing enhancements), had served almost double the sentence the government had agreed to recommend by the time of our decision in his appeal, and was scheduled for release "soon." Kurkculer, 918 F.2d at 296-98, 302. We therefore concluded that the only way for the defendant to obtain any remaining benefit from his agreement with the government was by exercising our equitable power to direct the district court to impose a time-served sentence on

_____

[8] By our review, Kurkculer is one of only two cases in which we have exercised our equitable power to direct a specific sentence on remand. See 918 F.2d at 301; Correale v. United States, 479 F.2d 944 (1st Cir. 1973).

remand.  See id. at 302.  By contrast, given that Maldonado is not scheduled for release until February 2027, a new sentencing hearing in which the government scrupulously follows its obligations in the plea agreement could still provide him the possibility of a significantly reduced sentence.  That is particularly so because we have every confidence that the parties will cooperate to ensure a prompt re-sentencing.

Accordingly, following "well-settled precedent," United States v. Clark, 55 F.3d 9, 14 (1st Cir. 1995), and "in accordance with our normal practice upon finding prosecutorial breach, we remand . . . for resentencing before a different judge," Mojica-Ramos, 103 F.4th at 854 (quotation marks and citation omitted).  In remanding with these instructions, "[w]e emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge."  Santobello v. New York, 404 U.S. 257, 263 (1971).

## III. CONCLUSION

For all these reasons, we **vacate** Maldonado's sentence and **remand** for expedited resentencing before a different district court judge.