# United States Court of Appeals
## For the First Circuit

No. 25-1607

UNITED STATES,

Appellee,

v.

HÉCTOR MALDONADO-MALDONADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. María Antongiorgi-Jordán, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Rikelman, Circuit Judges.

José David Rodríguez, Assistant Federal Public Defender, with whom Rachel Brill, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appellate Unit, were on brief, for appellant.
Maarja T. Luhtaru, with whom W. Stephen Muldrow, United States Attorney, Juan Carlos Reyes-Ramos, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

June 8, 2026

**RIKELMAN**, **Circuit Judge**.  For the second time, Héctor Maldonado-Maldonado ("Maldonado") appeals his sentence for assaulting a corrections officer.  He lodges several procedural challenges to his revised sentence.  We agree with Maldonado that the district court legally erred when it relied on information outside the record, without any notice to him, in determining his sentence.  Thus, we vacate the judgment and remand for resentencing.

## I. BACKGROUND[1]

### A. Relevant Facts

In August 2020, while he was incarcerated at the Metropolitan Detention Center in Guaynabo, Maldonado assaulted a senior corrections officer (SCO).  See United States v. Maldonado-Maldonado (Maldonado I), 134 F.4th 32, 33-34 (1st Cir. 2025).  During the assault, Maldonado punched the SCO multiple times and placed him in a headlock, all with the help of his cellmate, Miguel Santana-Aviles ("Santana").  See id. at 34.  The SCO suffered injuries to his head and neck and experienced headaches for months after the attack.  See id.  A grand jury eventually charged both Maldonado and Santana with assaulting,

---

[1] Because this appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the unobjected-to portions of the Presentence Investigation Report, and the transcript of the sentencing hearing.  See United States v. Colón-Cordero, 91 F.4th 41, 45 (1st Cir. 2024).

resisting, or impeding a federal officer. <u>See</u> 18 U.S.C. § 111(a)(1), (b).

## B. Procedural History

### 1. The Initial Sentencing and Appeal

Although Santana proceeded to trial, Maldonado eventually pleaded guilty to the charge against him. <u>See</u> <u>Maldonado I</u>, 134 F.4th at 34. As part of his plea deal, Maldonado and the government agreed to propose to the district court a sentencing calculation that hinged on applying the "[o]bstructing or [i]mpeding [o]fficers" guideline in the United States Sentencing Guidelines. <u>See</u> U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 2A2.4 (U.S. Sent'g Comm'n 2021).[2] Given Maldonado's criminal history category and various adjustments, the agreed-upon calculation would have yielded a sentencing range of 18 to 24 months in prison.

Separately, the U.S. Probation Office submitted a Presentence Investigation Report (PSR) that recommended a different, higher guidelines calculation, resulting in a guidelines sentencing range of 63 to 78 months in prison. In preparing the PSR, the probation officer relied on evidence about the assault that the government introduced at Santana's March 2022

---

[2] Throughout this opinion, we refer to the version of the U.S. Sentencing Guidelines that was in effect at the time of the relevant sentencing proceeding.

- 3 -

trial but that was not included in the plea agreement's stipulation of facts. This evidence led her to recommend that the district court apply a different guideline, the "aggravated assault" guideline, in determining Maldonado's sentence. See U.S.S.G. § 2A2.2. The probation officer also recommended several additional sentencing enhancements that were available under the "aggravated assault" guideline but not the "impeding officers" guideline contemplated by the plea agreement. See Maldonado I, 134 F.4th at 35.

Before and during Maldonado's August 2022 sentencing hearing, the government made recommendations to the district court that deviated from the plea agreement it had signed. See id. at 36. In particular, the government argued during the hearing that the court should apply an enhancement that was available only under the "aggravated assault" guideline. See id. It also characterized Maldonado's assault on the SCO as especially serious, using language like "extraordinary," and described Maldonado himself as "inherent[ly] dangerous[]." Id. (alterations in original).

The district court adopted the PSR's sentencing guidelines calculation, which depended on application of the "aggravated assault" guideline. It then sentenced Maldonado to the upper end of the resulting guidelines range -- 78 months in prison.

Maldonado appealed his initial sentence on multiple grounds, including that the government had breached the plea agreement. In response, the government conceded its breach. It forthrightly admitted that it had violated the plea agreement by advocating for the application of guidelines and enhancements inconsistent with that agreement. See id. at 37-38. We concurred, vacated Maldonado's sentence on that ground, and remanded for resentencing. See id. at 38-39.

Consistent with our standard practice in plea-breach cases, we remanded the case to a different district court judge. See id. at 39 (citing United States v. Mojica-Ramos, 103 F.4th 844, 854 (1st Cir. 2024)). But we declined Maldonado's request to instruct the district court, on remand, to impose a sentence of time served. See id. at 38-39.

### 2. The Resentencing Hearing

The district court resentenced Maldonado on May 28, 2025. Before the resentencing hearing, the government did not submit a revised sentencing memorandum, and the probation officer did not submit a revised PSR.[3] In his own sentencing memorandum, Maldonado requested a sentence of time served, based on the guidelines calculation set forth in the plea agreement.

---

[3] The probation officer submitted a revised PSR a few days after the resentencing hearing but only to reflect a change in Maldonado's criminal history category.

- 5 -

At the resentencing hearing, the government scrupulously fulfilled its obligations under the plea agreement. It began the hearing by asking the district court to apply the sentencing range contemplated by the plea agreement, not the PSR. It then went on to explain that, because Maldonado had already served 48 months in prison as of that date, it was requesting a sentence of time served.

The government also supported Maldonado's request for an adjustment to his criminal history category, in light of a 2023 amendment to the Sentencing Guidelines. See U.S.S.G. supp. app. C, amend. 821, pt. A (U.S. Sent'g Comm'n 2023). That adjustment would place Maldonado into a lower category -- Category II, as opposed to Category III.

As for Maldonado, he reiterated his request for a sentence of time served at the hearing. In arguing for that sentence, he objected to the guidelines calculations in the PSR, contending that the probation officer relied on evidence introduced at Santana's trial that was not part of the record in his case and was inconsistent with the facts set out in his plea agreement.

After the parties finished their arguments, the district court imposed its sentence. It began by stating its view that "[t]he guidelines agreed [to] by the parties do not reflect the seriousness of the offense." The court reached that conclusion,

it explained, after "review[ing]" and "tak[ing] . . . into consideration" "not only [Maldonado's] original sentencing hearing but the trial transcript of the co-[d]efendant [Santana]." Although Maldonado objected to the court relying on testimony from Santana's trial, the court pointed out that Maldonado had "plenty of notice" about that testimony because it was discussed in his initial sentencing hearing and appeared in the PSR. Thus, the court overruled Maldonado's objection and noted that it "agree[d] with the findings made" in the initial sentencing hearing that supported the application of the "aggravated assault" guideline. Ultimately, the court adopted the PSR's guidelines calculations (except for the criminal history category), resulting in a guidelines sentencing range of 57 to 71 months in prison.

The district court then turned to the sentencing factors set forth in 18 U.S.C. § 3553(a). Among other details from Maldonado's background, the court highlighted Maldonado's history of disciplinary violations while incarcerated. It described the seven violations that Maldonado incurred even before he assaulted the SCO in August 2020, and the additional five violations between the date of the assault and Maldonado's initial sentencing in August 2022.

In recounting Maldonado's background, the district court also referred to five recent disciplinary violations that were not

included in the PSR.[4]  Those violations involved conduct such as refusing to obey an order, assault without serious injury, lying, and refusing a drug test.  The dates of these incidents ranged from October 2022 (just after Maldonado's initial sentencing) to March 2025 (three months before his resentencing).  After listing these five most recent disciplinary violations, the court remarked that "Maldonado's pattern of conduct while incarcerated demonstrates that this [d]efendant has yet to make steps towards his rehabilitation and has no regard for rules or lawful behavior."

The district court then detailed Maldonado and Santana's assault of the SCO, noting that the assault was part of Maldonado's "demonstrated pattern of hostile behavior."  The court continued:

> While the [d]efendant allocuted that he has learned his lesson and that he has now control of his emotions, the truth of the matter is that the record proves him wrong, because after he was sentenced in this case, he has committed [five] other violations [while incarcerated].  He has no respect . . . for the law.  And as I said, the risk of recidivism is high.

In light of these factors, the district court rejected the parties' requested sentence of time served.  Instead, it

---

[4] There is some ambiguity in the record and briefing about whether there were four or five such violations. We refer to five violations throughout this opinion, but the precise number is immaterial to our analysis.

- 8 -

sentenced Maldonado to the "upper end of the amended guideline range" -- 71 months.[5]

Maldonado promptly objected to the district court's decision to rely on disciplinary violations not discussed in the PSR (and thus unknown to his counsel) in determining his sentence. The court responded, "I did not make a ruling . . . based on [Maldonado's] violations at the correctional institution. I just stated that this is an indication of [Maldonado's] poor prognosis of his rehabilitation and the fact that it speaks as to his possibilities of recidivism." The court continued that the "sentence is based solely on the facts of [Maldonado's] case," but then added, "I want to leave the record clear that . . . the administrative charges . . . were mentioned solely for the purposes of prognosis of rehabilitation." When Maldonado reasserted his objection to any consideration of violations not listed in the PSR, the court repeated, "[T]hey were not. The sentence was imposed based on the Criminal History Category of II and a base offense level of 24, based strictly on the facts of this case. Of course, the [c]ourt takes into consideration the prognosis of rehabilitation of this [d]efendant."

Maldonado timely appealed.

---

[5] Maldonado is currently scheduled to be released on October 19, 2026.

## II. DISCUSSION

Maldonado contends that the district court procedurally erred by violating our mandate in Maldonado I and by considering extra-record facts in determining his sentence. We reject his first challenge but find merit in the second.

### A. Compliance with the Mandate

According to Maldonado, the district court violated "both the letter and the spirit" of our decision in Maldonado I by considering materials infected by the government's initial breach of his plea agreement. As we explain, we disagree.

Because Maldonado acknowledges that he did not articulate this objection below, our review is for plain error. See United States v. Rosa-Borges, 174 F.4th 281, 287 (1st Cir. 2026). To pass the "demanding plain error test," Maldonado must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (alteration in original) (quoting United States v. Cheveres-Morales, 83 F.4th 34, 42-43 (1st Cir. 2023)). For an error to be "clear or obvious," it "must be 'indisputable' in light of controlling law." United States v. Muñoz-Gonzalez, 145 F.4th 21, 26 (1st Cir. 2025) (quoting United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021)).

The mandate rule requires a district court to "follow the decision of an appeals court and conform with its direction on remand." Rosa-Borges, 174 F.4th at 287 (citation modified). This obligation encompasses "both the letter and the spirit of the mandate, taking into account our opinion and the circumstances it embraced." Id. (citation modified). The mandate rule thus avoids "relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." Cheveres-Morales, 83 F.4th at 40 (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)).

Maldonado claims that the district court violated the letter of the mandate by reviewing two documents -- the government's sentencing memorandum and the initial sentencing hearing transcript -- "the very materials this Court had already determined were tainted by breach." And he is, of course, correct that we held that the government breached the plea agreement through its advocacy at the initial sentencing hearing.[6]

But Maldonado does not identify any language from Maldonado I that explicitly or implicitly prohibited the district court from reviewing materials associated with that hearing.

_____

[6] The government suggests that its sentencing memorandum was not part of the advocacy that breached the plea agreement, whereas Maldonado contends that the memorandum implied the use of an enhancement that was inconsistent with that agreement. The outcome of this dispute would not impact our decision, so we need not resolve it.

- 11 -

Indeed, we expressly declined to cabin the resentencing court's broad discretion on remand. See Maldonado I, 134 F.4th at 38-39. We explained that "[t]he obligation of specific performance of the plea agreement runs against the government, not the district court," and that "the plea agreement did not bind the district court to adopt the parties' recommended sentencing range." Id. at 38. Thus, our decision enforcing that agreement placed limits only on the government. And given the "broad discretion" a sentencing court has to "consider information pertaining to the defendant" and his case, we could not possibly prohibit the court from reviewing materials on its own docket. United States v. Ramos-Carreras, 59 F.4th 1, 5 (1st Cir. 2023) (quoting United States v. Millán-Isaac, 749 F.3d 57, 69 (1st Cir. 2014)); see 18 U.S.C. § 3661.

We are also unpersuaded by Maldonado's separate argument about the "spirit" of our mandate. He submits that the district court's review of the breaching materials undermined our ruling reassigning the case to a different judge. In Maldonado's view, the resentencing court's exposure to and reliance on the government's advocacy in the initial hearing deprived him of a "clean slate" on remand.

To be sure, the district court could have proceeded on remand without reviewing the transcript of Maldonado's initial sentencing hearing, which our opinion concluded was rife with

advocacy by the government that breached the plea agreement. See Maldonado I, 134 F.4th at 37-38. As the government points out, however, the district court would have learned about most of the details of the government's breach from reading our opinion.[7] (Citing United States v. Castillo-Torres, 8 F.4th 68, 73 (1st Cir. 2021).)

On remand, Maldonado received the benefit of a resentencing in which the government scrupulously adhered to its promises in the plea agreement and advocated for the agreed-upon sentencing range before a new judge. See United States v. Clark, 55 F.3d 9, 14 (1st Cir. 1995) ("[The defendant] offers that [plea] not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court." (quoting Correale v. United States, 479 F.2d 944, 949 (1st Cir. 1973))). That was the "clean slate" to which he was entitled.

In arguing otherwise, Maldonado cites only to our decisions describing our practice of remanding to a different district court judge when we have determined that the government has breached a plea agreement. See, e.g., Mojica-Ramos, 103 F.4th

---

[7] At oral argument, Maldonado contended that Maldonado I "describ[ed] the nature of the breach" in a single sentence. That is incorrect. We described the nature of the government's breach over the course of several paragraphs, detailing both its proposed guidelines calculations that were inconsistent with the plea agreement and the provocative language that it used to describe Maldonado and his conduct. See Maldonado I, 134 F.4th at 36-38.

- 13 -

at 854.  But he offers no clear authority for the proposition that, once we do so, the court cannot review earlier filings and proceedings in that case.  Considering the "demanding" standard for plain error, we discern no clear or obvious error in the court's implementation of our mandate from Maldonado I and must reject Maldonado's bid for vacatur on this ground.  Rosa-Borges, 174 F.4th at 287.

## B. Consideration of Extra-Record Materials

Maldonado next argues that the district court erred by considering information from outside the record in determining his sentence.  On this point, we agree.

Maldonado contends that the district court referenced and relied on two sets of extra-record materials during the resentencing hearing: testimony from Santana's trial and the five disciplinary violations that postdated his initial sentencing. Because Maldonado preserved his objections to the court's consideration of these materials, our review is for abuse of discretion.  See United States v. Coplin-Benjamin, 79 F.4th 36, 42 (1st Cir. 2023).

We begin and end our analysis with the district court's consideration of Maldonado's latest disciplinary violations, without any notice to the defense, which we conclude amounted to

procedural error.[8] According to Maldonado, the district court must have learned about the newer violations during an ex parte communication with the probation officer. The government does not dispute that account.

In general, a district court may engage in ex parte communications with a probation officer. See United States v. Bramley, 847 F.3d 1, 6 (1st Cir. 2017). But "a convicted defendant has the right to be sentenced on the basis of accurate and reliable information, and . . . implicit in this right is the opportunity to rebut the evidence and the information to be considered by the court." Ramos-Carreras, 59 F.4th at 5 (citation modified). So we have consistently held that, even when it comes from a probation officer, "factual information relevant to sentencing must be disclosed to the defendant." Bramley, 847 F.3d at 7; see Ramos-Carreras, 59 F.4th at 6. Further, in determining a sentence, a district court cannot rely on information shared by a probation officer during an ex parte communication if that information is both "new," "meaning information not already found in the district court's record," and "significant" or "material[]." Ramos-Carreras, 59 F.4th at 5 (quoting United States v. Rivera-Rodríguez, 489 F.3d 48, 54 (1st Cir. 2007)).

---

[8] We therefore do not reach Maldonado's argument about the district court's consideration of evidence from Santana's trial. See Colón-Cordero, 91 F.4th at 58.

- 15 -

The government acknowledges that the "district court should have provided notice that it would consider an updated disciplinary report at Maldonado's resentencing hearing."  And it concedes that the five newest disciplinary violations were not included in the PSR and that defense counsel had no notice that they might come up at that hearing.  But it argues that there is no reversible error here because the court did not "materially rel[y] on" those violations in determining Maldonado's sentence. Ramos-Carreras, 59 F.4th at 5 (quoting Rivera-Rodríguez, 489 F.3d at 55).

The transcript of the resentencing hearing, however, contradicts the government's argument and indicates that the district court did rely on the extra-record information. Immediately after listing the five new violations, the court remarked that Maldonado's "pattern of conduct" showed he was not rehabilitated and had "no regard for . . . lawful behavior."  And in explaining why it viewed Maldonado's "risk of recidivism [a]s high," and why it doubted his claim during his allocution that he had "learned his lesson," the court pointed to the disciplinary violations he had committed "after he was sentenced in this case." Almost immediately after this particular comment, the court pronounced its sentence.

We have previously interpreted the proximity between a sentencing court's reference to a fact and its announcement of the

sentence as supporting the conclusion that the court relied on that fact. See Ramos-Carreras, 59 F.4th at 7; United States v. Navarro-Santisteban, 83 F.4th 44, 58 (1st Cir. 2023). Maldonado's resentencing transcript supports that same inference.

What is more, when Maldonado objected to the district court's reliance on the extra-record violations later in the hearing, the court responded that they "were mentioned solely for the purposes of prognosis of rehabilitation." The court even added that, in determining the sentence, it "t[ook] into consideration the prognosis of rehabilitation of this [d]efendant." Granted, the court at other points used language that could be understood to have disclaimed any reliance on the five violations. But we cannot ignore its explicit statement that it factored the violations into its analysis of Maldanado's "prognosis of rehabilitation," along with its statement that his "prognosis of rehabilitation" itself informed the sentence.

Indeed, considerations of a defendant's risk of recidivism and potential for rehabilitation fit comfortably into several of § 3553(a)'s factors for "determining the particular sentence to be imposed." 18 U.S.C. § 3553(a). Those factors include, for example, "promot[ion of] respect for the law" and "protect[ing] the public from further crimes of the defendant." Id. § 3553(a)(2)(A), (C). So the district court was correct to include these factors in its analysis. But by explicitly

connecting the extra-record disciplinary violations to core sentencing considerations, the court indicated that they were significant to its sentence.

The government responds that the district court was focused on the forest, not the trees. According to the government, it was not those five violations in particular but Maldonado's "pattern of conduct" while incarcerated, in general, that cast a shadow on his potential for rehabilitation. Stacked against dozens of prior violations, the government claims, the five newer ones were "duplicative and pale in significance."

This argument falls short for several reasons. First, although the district court did emphasize a "pattern" of conduct, it also described the five newest disciplinary violations one by one and later referenced them specifically as undermining Maldonado's claim of rehabilitation. That makes sense, given that the court was analyzing his status at the time of the resentencing. The violations that were not part of the record were much more recent than the other, years-old incidents. The latest had occurred in March 2025, just three months before the resentencing. Those more recent violations were clearly, perhaps even especially, relevant to the court's evaluation of Maldonado's assertion that he had changed his ways.

Second, even if the district court had relied only on Maldonado's overarching "pattern" of violations, a pattern cannot

exist without its component parts.  As the government itself puts it, "Maldonado's behavior while incarcerated was at the forefront of the proceedings."  Thus, we have every reason to conclude that the court considered the extra-record violations, which were more recent, to be material to the durability of that "pattern."

Next, the government maintains that any procedural error that did occur was harmless.  See United States v. Negrón-Cruz, 153 F.4th 90, 103 (1st Cir. 2025) ("A procedural sentencing error is harmless if the error did not affect the district court's selection of the sentence imposed." (citation modified)).  In making this argument, it points to a portion of the sentencing transcript in which it claims that the district court "clarified" that the extra-record violations did not affect the sentence.

We read that portion of the transcript in a different way than the government does.  It is true that, after the district court pronounced its sentence, defense counsel objected "to the extent [the violations were] involved in any way in the calculus of the sentence," and the court then responded, "[T]hey were not." And our general practice is to take the sentencing court at its word when it disclaims reliance on certain facts in fashioning a sentence.  See, e.g., Rosa-Borges, 174 F.4th at 289.

But here, the transcript reflects inconsistent statements by the district court on this critical issue.  At one point, the court stated it was "tak[ing] into consideration" the

extra-record violations; it also referenced the violations just before pronouncing Maldonado's sentence. And in response to one of Maldonado's objections, the court said that the extra-record violations were "an indication of [Maldonado's] poor prognosis of his rehabilitation" and noted "the fact that [they] speak[] . . . to his possibilities of recidivism." Shortly afterward, the court continued, "Of course, the [c]ourt takes into consideration the prognosis of rehabilitation of this [d]efendant." From our review, most of the court's comments on the extra-record violations suggest that it did rely on them in determining the sentence. Although one line of the transcript suggests otherwise, we cannot agree that, in the broader context of the hearing as a whole, the court "clarified" that the extra-record materials were insignificant.[9]

Thus, we find prejudicial reversible error in the resentencing proceedings and vacate Maldonado's sentence. See Ramos-Carreras, 59 F.4th at 5.

---

[9] At oral argument, the government offered one last data point to support its position. In its view, the district court stated during a hearing on Maldonado's motion for bail pending appeal that it considered the extra-record violations to determine only the conditions of his supervised release, not his prison sentence. But we must conduct our analysis based on what the district court stated at the resentencing hearing, when it imposed Maldonado's prison sentence. And as we have explained, the transcript of the resentencing hearing indicates that the recent violations did impact his prison sentence.

## C. Remedy

Aside from vacating his sentence, Maldonado asks us to remand this case to a different district court judge for resentencing.[10]  The government objects to that request, noting that we do so only in "unusual cases."  (Quoting United States v. Rodríguez, 146 F.4th 48, 59 n.20 (1st Cir. 2025).)  But our precedent makes clear that when a district court imposes a sentence after relying on new and significant extra-record facts provided during an ex parte communication with a probation officer, we remand with instructions to reassign the case.  See Ramos-Carreras, 59 F.4th at 7-8; United States v. Zavala-Martí, 715 F.3d 44, 54-55, 57 (1st Cir. 2013).  And the government offers no argument for why that line of precedent does not apply here.  As a result, we grant Maldonado's request and remand with instructions to assign this case to a different district court judge.

## III. CONCLUSION

For all these reasons, we **vacate** Maldonado's sentence and **remand** for expedited resentencing before a different district court judge.[11]

---

[10] Although Maldonado asks that we remand with instructions to sentence him to time served if we find a violation of the mandate rule, he does not make that request as part of his challenge to the district court's reliance on extra-record materials.

[11] Maldonado's April 29, 2026 motion for bail pending appeal is therefore denied as moot.