# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 5, 2021        Decided December 3, 2021

No. 20-3011

UNITED STATES OF AMERICA,
APPELLEE

v.

KELVIN BREVARD,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00316-1)

---

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman,* Assistant U.S. Attorney at the time the brief was filed, and *John P. Mannarino*, Assistant U.S. Attorney.

Before: ROGERS, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

*Rogers*, CIRCUIT JUDGE:   In sentencing appellant Kelvin Brevard to 30 months' imprisonment for escape in violation of 18 U.S.C. § 751(a), the district court departed upward, pursuant to Sentencing Guidelines § 5K2.21, based on uncharged conduct in violation of the D.C. Criminal Code allegedly committed while Brevard was on escape status.  Alternatively, the district court found, pursuant to 18 U.S.C. § 3553(a), that an upward variance of the same number of months was appropriate in view of other factors in Brevard's criminal history.  Although, as Brevard points out, the departure was procedurally erroneous because the district court misinterpreted Guideline 5K2.21's application to District of Columbia Code offenses, the court affirms because the district court did not abuse its discretion in imposing an upward variance.

## I.

Brevard was serving the last few months of a sentence of 18 months' imprisonment for unlawful firearm possession under the D.C. Criminal Code at the Hope Village halfway house.  On July 31, 2019, he left and did not return.  About seven weeks later, he was apprehended and subsequently charged with one count of escape, pursuant to 18 U.S.C. § 751(a).  He declined the government's plea offer and pleaded guilty.

The Presentencing Investigation Report ("PSR") calculated an adjusted offense level of 7 and a criminal history category of V for Brevard.  The resulting advisory Guidelines range for Brevard's escape offense was 12–18 months'

imprisonment. The Probation Office recommended that Brevard be sentenced to 12 months' imprisonment. In a sentencing memorandum, the U.S. Attorney's Office viewed Brevard's prior convictions to place him in criminal history category VI and requested a sentence of 15 months' imprisonment, at the bottom of the resulting advisory Guidelines range of 15–21 months, noting Brevard suffered from mental health issues in need of treatment and had accepted responsibility for his crime. Brevard sought a downward variance to a sentence of time served because of his history of mental illness and his fear for his safety at the halfway house. Counsel also referred to sentencing disparities that result from "walk-away" escape cases prosecuted as federal offenses in the District of Columbia.

On the scheduled sentencing date, the district court announced that it wanted to hear evidence regarding a separate assault and threats incident mentioned in the PSR that occurred on September 17, 2019, seven weeks after Brevard had failed to return to the halfway house. The court was considering an upward departure pursuant to Guideline 5K2.21 for the conduct involved in that incident. The Assistant U.S. Attorney explained that Brevard had been charged in the Superior Court of the District of Columbia with two offenses under the D.C. Criminal Code, but the charges were dismissed when the complainant and her mother did not appear for trial. Counsel for Brevard objected that relying solely on the information in the PSR would deny Brevard the opportunity to confront the witnesses regarding the threats incident. The district court adjourned the sentencing hearing for about a week, requesting that the U.S. Attorney's Office present at least one of the police officers who responded to the incident "and anyone else [the prosecutor] think[s] may be appropriate" to testify. Sent. Tr. 4–5 (Feb. 11, 2020).

At the reconvened sentencing hearing, the Assistant U.S. Attorney presented D.C. Metropolitan Police Officer Charles Kasongo, who was a trainee at the time of the alleged assault. Officer Kasongo testified that on September 17, 2019, he responded to a 911 call for a "man with a gun." Sent. Tr. 10–12 (Feb. 20, 2020). When he and two other officers arrived, they saw two women in the stairwell outside of one woman's apartment. Officer Kasongo "mostly guard[ed]" the apartment house door downstairs in case the man with a gun returned while the other officers spoke to the women "upstairs." *Id.* at 11–12. From what Officer Kasongo could see, one woman was "a little older" than the other, and he came to learn that the women were Bernadette McQueen and her mother. *Id.* at 12–13. Officer Kasongo testified that Ms. McQueen "seemed panicked" and "kept saying that he's a killer, he's a killer, he's a killer," *id.* at 13–14, and her mother "was panicked as well but a little bit frustrated and upset," *id.* at 14. Further, as best he could hear, Ms. McQueen's mother told the officers that Brevard had knocked on her apartment door "with a weapon" and told her to "tell your bitch of a daughter that I will kill her." *Id.* at 16. When she asked Brevard why he was "disrespecting [her] house," he "repeated what he said" and "lifted [his] shirt and showed a weapon." *Id.* at 16–17. The women identified Brevard as the man with a gun, who was the father of Ms. McQueen's child. Officer Kasongo later learned from the other officers that the women said the child had been waiting at a bus stop with Ms. McQueen's new boyfriend when Brevard approached; the boyfriend "took off running," and the child "went back to the apartment saying [Brevard] has a gun, he has a gun." *Id.* at 22–24.

Several hours later, the officers saw Brevard in a parking lot. When they approached, Brevard ran. After a brief chase, the officers apprehended him. The officers did not find a firearm on his person or along the chase route. Officer

Kasongo testified that he did not see Brevard move as though he was armed with a gun or see him with a gun. Brevard, who had been at large after leaving the halfway house, was arrested and subsequently charged with escape in the U.S. District Court for the District of Columbia and with assault and threats in D.C. Superior Court.

Upon hearing Officer Kasongo's testimony and the arguments of both counsel, the district court judge stated that he would consider the uncharged conduct in determining the appropriate sentence for the escape, ruling that Ms. McQueen's mother's statements qualified as an excited utterance and were not hearsay. *See* FED. R. EVID. 803(2). The judge noted that he could rely on hearsay at sentencing in any event. Either way, the judge concluded that the threats had been proved by a preponderance of the evidence. In his view, the threats "fit[] exactly within [Guideline 5K2.21] and particularly the idea that charges . . . were not pursued in the case for any other reason," namely, the "failure of the complaining witness to cooperate with the prosecution." Tr. 75. The judge had stated that "what somebody does while on escape [is] very relevant to the appropriate sentence." Sent. Tr. 4 (Feb. 11, 2020). Brevard objected that the plain text of Guideline 5K2.21 requires the uncharged conduct to be a potential "part of this case," namely the federal escape case, and that here the uncharged conduct was not part of the escape offense. Tr. 79 (Feb. 20, 2020).

The Assistant U.S. Attorney's revised sentencing request sought an 18-month sentence, which was at the top of the applicable Guidelines range. Defense counsel renewed his request that the court impose a downward variance and sentence Brevard to time served.

The district court, upon conducting an analysis of the 18 U.S.C. § 3553(a) factors on the record, found, among other

things, that Brevard's escape indicated a continuing "lack of respect for the law and the criminal justice system," Tr. 104 (Feb. 20, 2020), and that Brevard had a "clear history of disregarding Court orders and judicial supervision," *id.* at 106–07, as well as a prior escape in 2014. The court also found that despite receiving "probation only sentences, split sentences and sentences of time served" in the past, Brevard had not "ma[de] the most of [those] good opportunities," instead continuing to "reoffend frequently while on probation or supervised release in a prior case." *Id.* at 107. Therefore, the court explained that, even if Brevard was correct about the proper interpretation of Guideline 5K2.21, the court would "consider [the alleged threats conduct] under [§] 3553(a) as a variance." *Id.* at 79–80. The court imposed a sentence of 30 months both as "an upward departure under [G]uideline 5K2.21" and, alternatively, as an "upward variance under [§] 3553(a)." *Id.* at 106. The sentence was to run consecutive to any other sentence Brevard was serving, followed by three years' supervised release. Brevard was also ordered to stay away from Ms. McQueen absent Probation Office approval.

Brevard appeals.

## II.

Pursuant to *Gall v. United States*, 552 U.S. 38, 51 (2007), this court reviews sentencing challenges "for abuse of discretion under a two-step analysis: first to 'ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts'; and second, to ensure, '[a]ssuming that the district court's sentencing decision is procedurally sound,' the sentence is substantively reasonable." *United States v. Lawrence*, 662 F.3d 551, 556 (D.C. Cir. 2011) (quoting *Gall*, 552 U.S. at 51). A sentencing court commits procedural error if it bases its

sentence on an "incorrect legal interpretation[]" of the Guidelines. *United States v. Olivares*, 473 F.3d 1224, 1226 (D.C. Cir. 2006). Further, where the sentencing court "decides that an outside-Guidelines sentence is warranted, [t]he [judge] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. The Supreme Court viewed as "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id*.

## A.

Guideline 5K2.21 provides, in relevant part, that a sentencing court may "depart upward [from the applicable Guidelines range] to reflect the actual seriousness of the offense based on conduct . . . underlying a *potential charge* not pursued *in the case* as part of a plea agreement or for any other reason." U.S. Sent'g Guidelines Manual § 5K2.21 (U.S. Sent'g Comm'n 2018) (emphasis added).

On appeal, Brevard renews his argument that, in view of the plain text of Guideline 5K2.21, the district court erred in determining that an upward departure pursuant to the Guideline was appropriate based on the uncharged threats. Appellant's Br. 19–26. Because that conduct was "discrete from and unrelated to" his federal escape case, Brevard maintains that it would have been improper under Federal Rule of Criminal Procedure 8 to join a potential charge based on that conduct with the escape case. *Id.* at 16.

The government responds that the district court's interpretation of Guideline 5K2.21 was correct because conduct occurring while on escape, however remote in time and dissimilar in character from the escape, necessarily "reflect[s] the actual seriousness" of the escape offense. *See*

Appellees' Br. 25–28. Because escape is treated as a continuing offense for some purposes, *see United States v. Bailey*, 444 U.S. 394, 413 (1980), the government maintains that any conduct while on escape is contemporaneous with, and hence reflects the seriousness of, the escape offense. *See id.* at 26, 28.

But this interpretation is contrary to the plain text of Guideline 5K2.21, which requires both that the departure "reflect the actual seriousness of the offense" and that the uncharged conduct "underl[ie] a potential charge not pursued in the case." U.S.S.G. § 5K2.21. "[T]he case" is Brevard's federal prosecution for escape, and given Congress' division of D.C. Code jurisdiction between the federal courts and the D.C. courts, *see generally Palmore v. United States*, 411 U.S. 389, 392 n.2 (1973), the uncharged threats conduct was not a "potential charge" that could have been "pursued" in the federal escape case.

D.C. Code § 11-502(3) provides that the United States District Court for the District of Columbia has jurisdiction over a charge under the District of Columbia Criminal Code when it "is joined in the same information or indictment with any Federal offense." This court has understood "joined" to mean "properly joined" under Federal Rule of Criminal Procedure 8. *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998) (citing *United States v. Jackson*, 562 F.2d 789, 797 (D.C. Cir. 1977)). By statute, then, the district court could have had jurisdiction over the D.C. Code threats charges against Brevard that were dismissed only if those charges were properly "joined in the same information or indictment" with the federal escape offense. D.C. Code § 11-502(3).

Rule 8(a) provides that joinder of offenses is proper when the offenses "are of the same or similar character, or are based

on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). "In order for offenses discrete and dissimilar on their faces to be properly joined under Rule 8, there must be some logical relationship between them." *Richardson*, 161 F.3d at 734 (citing *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)). In *Richardson*, where a D.C. Code threats charge was joined in an indictment for federal weapons offenses when the only relationship between the threats and weapons offenses was that the defendant made the threats to a law enforcement officer after his arrest on the weapons charges, *id.* at 730, 733 n.10, this court held that the "'but for' sequential relationship" between the offenses did not make them "logically related," and consequently "Rule 8 was strained beyond tolerable limits," *id.* at 734.

So too here, whereby federal court jurisdiction over D.C. Code offenses required those offenses be joined in the federal information or indictment. As Brevard maintains, the escape was "an independent crime" that occurred on July 31, 2019, when Brevard "left the halfway house and failed to return," while the alleged threats conduct occurred seven weeks later. Appellant's Br. 22. The separate offenses, therefore, are not "based on the same act or transaction" and there was no evidence they are "connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). Nor are the threats "of the same or similar character" as Brevard's escape. *Id.* The only connection between the threats and the escape offense was temporal: the threats occurred while Brevard's escape status continued. That tenuous temporal relationship is insufficient to meet even the "liberal[]" Rule 8 standard. *Richardson*, 161 F.3d at 733.

Because the uncharged D.C. Code offenses could not have been properly joined with Brevard's federal escape charge, the

threats conduct did not "underl[ie] a potential charge" that could have been "pursued in the case." U.S.S.G. § 5K2.21. The district court therefore erred in departing upward pursuant to Guideline 5K2.21 based on that uncharged conduct.[1]

**B.**

As an alternative basis for the 30-month sentence, the district court determined, pursuant to 18 U.S.C. § 3553(a), that a variance from the applicable Sentencing Guidelines range was appropriate. *See United States v. Simpson*, 430 F.3d 1177, 1184–85 (D.C. Cir. 2005); *see also United States v. Ventura*, 650 F.3d 746, 751 (D.C. Cir. 2011).

Brevard objects that the variance was based on Officer Kasongo's particularly unreliable hearsay testimony about the threats incident, evidence that was not "sufficiently compelling to support the degree of the variance," *Gall*, 552 U.S. at 50. Specifically, Brevard maintains that while hearsay may be considered at sentencing, the district court failed to appropriately weigh Officer Kasongo's testimony in view of Brevard's inability to challenge it. In his view, such a substantial variance — described by Brevard as "nearly double" the top of the applicable Guidelines range, producing a sentence more than twice as long as the one Brevard was completing when he escaped, Appellant's Br. 2 — required a more compelling justification than the unconfronted hearsay

---

[1] Because the D.C. Code charges were not "dismissed as part of a plea agreement in the case," the court has no occasion to consider whether such charges can be considered by a sentencing judge under Guideline 5K2.21 when those charges could not have been otherwise "pursued in the case." U.S.S.G. § 5K2.21.

testimony on which the district court relied.  *See* Appellant's Br. 31–32.

Given our deferential standard of review of a district court's balancing of the § 3553(a) factors, the court "cannot conclude that the [alternative] sentence was substantively unreasonable." *United States v. Williamson*, 903 F.3d 124, 136 (D.C. Cir. 2018).  The district court conducted a § 3553(a) analysis on the record, basing the variance in part on Brevard's criminal history demonstrating an inability to comply with court orders.  Apart from the uncharged threats, the court referred specifically to Brevard's prior escape, his numerous probation violations and failures to abide by release conditions, and his failure to "mak[e] the most" of the "numerous breaks" he had been given after previous offenses. Sent. Tr. 107.  In its alternative justification for the sentence, the court could properly rely on those factors in Brevard's criminal history, without regard to the uncharged threats conduct, to conclude that the top of the Sentencing Guidelines range did not "fully account for" the seriousness of Brevard's repeated failure to conform his conduct to court orders and the law.  *United States v. Brown*, 808 F.3d 865, 873 (D.C. Cir. 2015); *see* 18 U.S.C. § 3661; *cf.* U.S.S.G. § 5K2.0 cmt. background.

For much the same reason, Brevard's concern that the variance was inappropriately influenced by the erroneous departure under Guideline 5K2.21 is misplaced.  Brevard's criminal history provided an independent ground for the variance inasmuch as that history included not only firearms offenses and threats, but also a prior escape, assaulting and resisting law enforcement, and tampering with court-ordered supervision equipment.

Accordingly, the district court did not abuse its discretion in applying a variance upon concluding that the Guidelines

range did not accurately reflect the seriousness of Brevard's continued conduct. *See Brown*, 808 F.3d at 873; 18 U.S.C. § 3553(a)(1)–(4). This court may affirm the district court's alternative sentence based on a variance on that ground alone, *see Simpson*, 430 F.3d at 1185, and the district court's judgment is affirmed.