# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 10, 2026        Decided June 16, 2026

No. 24-3032

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES FITZGERALD HONESTY,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cr-00187-1)

———

*Howard B. Katzoff*, appointed by the court, argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeanine Ferris Pirro*, U.S. Attorney, and *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys.

Before: PILLARD and WALKER,[*] *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

———

[*] *Circuit Judge* WALKER joins the court's opinion as to all except for Part II.A.2 of the opinion.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Appellant James Honesty challenges his convictions upon pleading guilty to firearms and drugs offenses on two interrelated grounds. First, he contends that the government breached the Plea Agreement to cap its allocution to a range under the Sentencing Guidelines by implicitly advocating for a sentence above that range. Second, he contends that the district court erred procedurally by relying on erroneous factfinding and failing to explain the basis for imposing a sentence above the Guidelines range. Appellant Br. at 17–18. The court affirms. Upon plain error review, Honesty has failed to show that his claimed breach of the Plea Agreement through implicit advocacy was reasonably likely to have affected his sentence. Further, he fails to show procedural error by the district court.

**I.**

Honesty and the government entered into a Plea Agreement that he would plead guilty to two counts of a six-count indictment on firearms and drug charges: Count 1, felon in possession of a firearm and ammunition, and Count 4, possession of Phencyclidine ("PCP") with intent to distribute.[1]

---

[1] The superseding indictment charged in separate counts: (1) felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1); (2) possession of a controlled substance (N-Propylbutylone), 21 U.S.C. § 844(a); (3) possession of another controlled substance (N,N-Dimethylpentylone), 21 U.S.C. § 844(a); (4) possession of PCP with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(C); (5) possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A); and (6) possession of PCP with intent to distribute within a thousand feet of a school zone, 21 U.S.C. § 860(a). Superseding Indictment at 2–3 (May 11, 2023). The maximum term of imprisonment for Count 1 was fifteen years, 18 U.S.C.

Honesty acknowledged that the Statement of Offense "fairly and accurately describes" his offenses, and the Plea Agreement stated that the estimated Sentencing Guidelines range was 92 to 115 months, based on Honesty's criminal history. Plea Agreement ("PA") at 2 (Aug. 15, 2023) (attaching Statement of Offense).[2] The government agreed to dismiss the remaining counts and not to prosecute Honesty for other conduct described in the Statement of Offense. The government also agreed "to cap its allocution to the top of the applicable [S]entencing [G]uidelines range, as ultimately determined by the Court." PA at 2, 5. Both the defense and the government could "describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of [Honesty's] misconduct, including any misconduct not described in the charges to which [he] is pleading guilty, to inform the

---

§§ 922(g)(1), 924(a)(2), and for Count 4, twenty years, 21 U.S.C. § 841(a)(1) and (b)(1)(C).

[2] According to the Statement of Offense, police officers were on patrol in the Southeast quadrant of Washington, D.C., on the evening of May 23, 2022, when they received a lookout call for a Black male with a slim build and dreadlocks wearing a white shirt and blue jeans who "reportedly brandished a gun to the 9-1-1 caller's significant other." Statement at 3. The officers spotted Honesty, who matched the description. He fled when they approached to speak with him. In the ensuing chase, Honesty took a firearm from his satchel and dropped it in front of the officers as he turned a corner. He continued running and dropped the satchel shortly before the officers caught up to him. The firearm was a nine-millimeter semi-automatic handgun with one round in the chamber and twenty-one rounds in a magazine. The satchel contained three vials of PCP, thirty-two grams of N,N-Dimethylpentylone (Schedule I controlled substance), fifty-eight grams of N-Propylbutylone (Schedule I controlled substance), a small spoon with white powder residue, a large quantity of small Ziploc bags, a scale, and cash. "At the time [Honesty] possessed the [PCP], he intended to distribute it." *Id.* at 4.

presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement." *Id.* at 5. Further, if the district court considered "any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement" or "a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a)," then each party had "the right to answer any related inquiries from the Court" and to "allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein." *Id.*

A presentence report prepared by the Probation Office for the district court also identified Honesty's Guidelines range as 92 to 115 months' imprisonment and stated the Office had "not identified any factors that would warrant a variance from the applicable [G]uideline range based on the factors outlined in [18 U.S.C.] § 3553(a)." Presentence Report at 23, 28 (D.D.C. Nov. 14, 2023) ("PSR 1"). Honesty, through trial counsel, stated in a sentencing memorandum that his criminal history score had been incorrectly calculated in PSR 1, mistakenly including three points for a 2009 conviction that "times out" under Guidelines § 4A1.2(e) as well as an incorrect "status point," and that the correct Guidelines sentencing range was 63 to 78 months. Honesty Sent. Mem. at 5 (Jan. 19, 2024). Trial counsel requested a sentence of 72 months' imprisonment and five years' supervised release in view of Honesty's traumatic youth, his need for drug treatment, and his acceptance of responsibility, submitting two expert reports and character letters from family and friends.

The government's sentencing memorandum requested that Honesty be sentenced at the top of the correctly calculated Guidelines range: 96 months' imprisonment followed by three years of supervised release. Gov't. Sent. Mem. at 1 (Jan. 19, 2024). The government acknowledged the 2009 conviction had been incorrectly included in the Guidelines range calculation, but Honesty had failed to account for his guilty plea in October 2023, in a pending case in Maryland, and the correct sentencing range was 77 to 96 months. *Id*. at 11–14. Tracking the Section 3553(a) factors, the government stated its recommended sentence "reflects the serious nature of this offense, the repetitive and dangerous history of Defendant Honesty's other criminal offenses, and provides adequate deterrence to others in the community given the proliferation of firearms in our city." *Id*. at 16. Noting that the Guidelines were advisory, the district court must consider the Section 3553(a) factors, and sentencing variances could be based on factors not fully taken into account by the Guidelines, *id.* at 14–15, the government recounted that this was Honesty's fourth conviction for using or possessing a gun and that "[h]is 18-month sentence for the Assault with a Dangerous Weapon and 12 months sentence for Carrying a Pistol Without a License in 2009 . . . did nothing to stop [] Honesty from possessing and using guns again," *id.* at 18. The government also recounted the circumstances of the charges to which Honesty had pleaded guilty, including that he had "brandished" the firearm during an altercation,[3] intended to distribute the drugs, and dropped the firearm and drugs close to a school, *id.* at 16–19. The government concluded "Honesty's history and characteristics justify a lengthy term of imprisonment," *id*. at 19, and "96

---

[3] The government cited audio recordings of two 9-1-1 calls to the police, in which one caller said that Honesty had "pulled out a gun on [her] boyfriend and threatened to kill him." Gov't. Sent. Mem. at 18 (Exhibits 1 & 2).

months, which is at the top of the relevant range, is necessary and mandated by the 3553 factors," *id.* at 20.

In recounting Honesty's criminal history, the government stated at page 19 (emphasis added):

> Defendant Honesty's eight criminal history points *[do] not capture [the] totality of his criminal behavior*. As discussed above, the defendant's 2009 conviction [for carrying a pistol without a license] is not scored as two points because of the lapse of time, the majority of which the defendant was incarcerated because of the 2012 carjacking. In addition, the defendant's guilty plea in 22-cr-0049, the pending Maryland case, is scored as one point, instead of three points, in his criminal history despite the fact that the offense occurred before his arrest in this case. Incorporating those points into Defendant Honesty's criminal history score would result [in] a Guideline Range of 92 to 115 months, which was the [G]uideline range contemplated in the plea agreement.

By minute order of January 24, 2024, the district court stated it was considering imposing an upward departure and/or variance in view of information that Honesty's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," U.S.S.G. § 4A1.3(a)(1),[4] and invited comment by the parties.

---

[4] At the time, U.S.S.G. § 4A1.3(a)(1) permitted upward departures where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." As revised, effective November 1, 2025,

At the sentencing hearing, the district court, adopting findings in the revised PSR (Feb. 28, 2024), confirmed with both parties that the applicable Sentencing Guidelines range was 77 to 96 months' imprisonment on each count, to run concurrently, followed by concurrent terms of no more than three years' supervised release on Count 1 and at least three years on Count 4. Sent. Hg. Tr. at 5–8 (Mar. 11, 2024). The government prosecutor proceeded to review Honesty's "lengthy criminal history," including his recent guilty plea in a pending case in Maryland, and the circumstances of the two offenses on which he was to be sentenced. *Id*. at 11–15. In response to the district court's inquiry about an upward departure, the prosecutor stated, at *id*. 15–16 (emphasis added):

> AUSA: [I]n our plea agreement, we did cap our allocution at the top of the applicable [G]uidelines, as determined at the time of sentencing, *so I could not* stand here and *advocate* for an upward departure or upward variance. *But* I will say that when we did initially calculate his criminal history [G]uidelines, because the criminal history was so lengthy, we actually did think that the [G]uidelines for him was 92 to 115 months.

> THE COURT: That was actually the range that the parties agreed at the time of the plea was reasonable, as I recall.

---

"most departures" — including under U.S.S.G. § 4A1.3(a)(1) — have been "delete[d]" from the Guidelines Manual. *See* U.S.S.C., Amendments, at 79–80 (April 30, 2025), https://perma.cc/ZPW8-LEBF. The Sentencing Commission stated these revisions were partly to align to practice where courts have shifted from departures to variances based on the factors in 18 U.S.C. § 3553(a). *Id.* at 80.

AUSA: That's correct, your Honor. And . . . we did mention this in our sentencing memo * * * * where we stated that [] *Honesty's criminal history points do not really capture the totality of his criminal history behavior.* And we kind of outlined why that 2009 CPWL conviction aged out . . . , as well as his guilty plea in the Maryland case that I just discussed recently. * * * * *But* we are asking for a top-of-the-[G]uidelines sentence at 96 months on both counts, to run concurrent, followed by three years of supervised release.

Defense counsel responded, in turn, that the 9-1-1 call did not establish by a preponderance of evidence Honesty had "brandished" the firearm, *id.* at 17–18, and that Honesty's criminal history score had been correctly recalculated at the 77 to 96 months sentencing range, *id*. at 19. An upward departure was unwarranted, defense counsel argued, inasmuch as PSR 1 and the Plea Agreement had relied on an incorrectly calculated higher criminal history score, and recounted the reasons for a lower end Guidelines sentence set forth in Honesty's sentencing memorandum. *Id.* at 19–27.

The district court agreed an upward departure was unwarranted under U.S.S.G. § 4A1.3(a)(1), *supra* n.4, but imposed an upward variance of 115 months' imprisonment. *Id.* at 38, 44–45. The court gave four reasons: (1) Honesty's lengthy history of gun and drug violations made him "a de facto career offender, although not technically one under the [G]uidelines"; (2) he "brandished" the gun, as demonstrated by the statement of one of the 9-1-1 calls that constituted an "excited utterance"; (3) he abandoned the gun close to an elementary school; and (4) he possessed three different dangerous drugs. *Id.* at 44–45. Honesty appeals.

## II.

The Supreme Court has held "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). A claim that the government breached a plea agreement is reviewed only for plain error if, as here, *see* Appellant Br. at 19, the objection was not preserved. *See Puckett v. United States*, 556 U.S. 129, 134–36 (2009); FED. R. CRIM. P. 52(b). Reversal and remand for resentencing is then warranted only if there is "legal error," that is "clear or obvious, rather than subject to reasonable dispute," and the error "affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings," and upon satisfying these three prongs, "the court of appeals has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (emphasis in original) (citations and internal quotation marks omitted).

10

**A.**

Honesty sees a clear breach of the Plea Agreement by the government in its sentencing memorandum and during its allocution at the sentencing hearing. Appellant Br. at 19–25. The sentencing memorandum, he contends, implicitly advocated an above-Guidelines sentence by (1) emphasizing that the Guidelines are advisory and that it was not error for the district court to enter sentencing variances; (2) asserting that he had "brandished" the firearm on the basis of "uncharged, disputed evidence," and highlighting the dangers of gun violence generally; (3) using phraseology that conveyed the impression he deserved an above-Guidelines sentence, such as that his "history and characteristics justify a lengthy term of incarceration," Gov't. Sent. Mem. at 19; and (4) stating that his criminal history score "does not capture [the] totality of his criminal behavior," *id.* Additionally, Honesty contends, the government implicitly advocated for a variance in its allocution at sentencing by repeating that he had "brandished" the firearm and that his criminal history score was under-representative. Appellant Br. at 23–25. "In this way, the government's allocution advanced the notion that rather than his commission of the possessory offenses to which he had pleaded guilty, [] Honesty had actually committed more serious crimes involving a threat to commit murder and should be sentenced accordingly." Appellant Br. at 25.

Honesty relies on precedent in which defendants have argued that the government implicitly breached their plea agreements. *See* Appellant Br. at 25–26 (collecting cases). "[B]ecause the judicial system has sanctioned the plea bargaining process," Honesty observes, "the courts strictly enforce the government's obligations under a plea agreement." *Id.* at 26. The federal circuit courts of appeals have recognized that "because a defendant who enters into a plea agreement

waives a panoply of constitutional rights," the government's sentencing advocacy must conform to "the most meticulous standards of both promise and performance." *United States v. Mojica-Ramos*, 103 F.4th 844, 850 (lst Cir. 2024) (citation, alteration, and internal quotation marks omitted); *see, e.g.*, *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999); *United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019); *United States v. Atkinson*, 259 F.3d 648, 654 (7th Cir. 2001); *United States v. Hunter*, 835 F.3d 1320, 1330–31 (11th Cir. 2016).

Those standards prohibit "not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." *United States v. Murray*, 897 F.3d 298, 309–310 (D.C. Cir. 2018) (quoting *United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992)). The disingenuous conduct that Honesty sees is not unfamiliar to the federal courts of appeals. *See, e.g., United States v. Farias-Contreras*, 104 F.4th 22, 28–29 (9th Cir. 2024) (*en banc*); *Mojica-Ramos*, 103 F.4th at 850 (1st Cir.); *United States v. Bowler*, 585 F.2d 851, 855 (7th Cir. 1978). On occasion, in the wake of such end runs, the government has conceded error. *See, e.g.*, *United States v. Maldonado-Maldonado*, 134 F.4th 32, 37 (1st Cir. 2025); *United States v. King-Gore*, 875 F.3d 1141, 1145 (D.C. Cir. 2017). This court has long cautioned, in addressing a collateral attack on a sentence, that the government may not agree to allocute for a particular sentence and then implicitly advocate for a higher sentence "in all but name." *United States v. Pollard*, 959 F.2d 1011, 1024 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992). Such an agreement does not prohibit the government from pressing its case "with considerable force" so long as that advocacy is "just as consistent with a request" that is permitted under the plea agreement. *Id.* In accord with its allocution commitment under a plea agreement, the government has a "concurrent and equally solemn obligation to provide relevant information to

the sentencing court." *United States v. Almonte-Nunez*, 771 F.3d 84, 90 (1st Cir. 2014); *see United States v. Ahn*, 231 F.3d 26, 38 (D.C. Cir. 2000).

To determine whether the government engaged in impermissible tactics and breached the Plea Agreement, the court reads the words of a plea agreement in their context and considers the totality of the circumstances. *United States v. Munafo*, 123 F.4th 1373, 1379–81 (D.C. Cir. 2024); *Almonte-Nunez*, 771 F.3d at 91 (citations omitted).

**1.**

The Plea Agreement permitted the government "to describe fully, both orally and in writing, to the sentencing judge the nature and seriousness of [Honesty's] misconduct, including any misconduct not described in the charges to which [he] is pleading guilty," "to inform the presentence report writer and the Court of any relevant facts," and "to allocute for a sentence within the Guidelines range." PA at 5. Hence, the government's references to Honesty's "brandishing" of the firearm and his past criminal conduct were within the permissible scope to the extent this advocacy was "just as consistent with a request" for a sentence at the upper end of the Guideline range. *Pollard*, 959 F.2d at 1024. Those submissions were consistent with "[t]he government's obligation to furnish relevant information to the sentencing court" and its "corollary obligation to honor commitments made under a plea agreement." *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000).

Arguably, when viewed as part of the government's sentencing memorandum, *see Munafo*, 123 F.4th at 1379, the government's statements that Honesty's criminal history score was under-representative might be understood as advocacy

"consistent with a request for a long prison sentence that would be short of [115 months, namely, 96 months]," *Pollard*, 959 F.2d at 1024; *cf. Almonte-Nunez*, 771 F.3d at 90–91. That is, those statements might be characterized as vigorous advocacy on behalf of a sentence at the top of the applicable Guidelines range by suggesting that a 96-month sentence was reasonable because the higher sentencing range in the Plea Agreement was also reasonable. And the government reiterated — 7 times over the course of its sentencing memorandum and allocution — that it was recommending a sentence at the top of the Guidelines range: 96 months. Appellee Br. at 21–22 (citing Gov't. Sent. Mem. at 1, 16, 20–21; Sent. Hg. Tr. at 15–17).

**2.**

Yet, the government did more than merely approach the limits of permissible advocacy; it crossed the line when it stated in its sentencing memorandum that Honesty's criminal history score did not "capture [the] totality of his criminal behavior," a phrase that tracked the text of U.S.S.G. § 4A1.3(a)(1) regarding upward departures, *supra* n.4, and when it referred to other offenses that had been correctly excluded from the accurate Guidelines calculation but if considered "would result [in] a Guideline Range of 92 to 115 months." Gov't. Sent. Mem. at 19, quoted *supra*. From the government's perspective, the quoted paragraph helps to explain why it was recommending a lengthy sentence at the top of the Guidelines range when Honesty was seeking a sentence at the lower end of that range. *See* Appellee Br. at 28–29. Maybe so, but that does not cure the overreaching performance contrary to the government's promise in the Plea Agreement to cap its allocution to the Guidelines range.

The paragraph at 19, as Honesty contends, contravenes the Plea Agreement by all but explicitly suggesting a basis for a

variance and a specific above-Guidelines range other than the Guidelines range that the parties had agreed applied and, per the Plea Agreement, constrained the government's advocacy at sentencing. Appellant Br. at 22. That is, the paragraph did more than just state the government's position for a sentence within the Sentencing Guidelines range "with considerable force"; it "introduced . . . implicitly the notion" of varying upward to the 92 to 115 months range, using "words that could be thought synonymous" with such a variance. *Pollard*, 959 F.2d at 1024**.** The prosecutor's allocution at sentencing, in response to the sentencing judge's inquiry about a departure exacerbated the seriousness of the government's failure to keep its promise to Honesty, repeating that "Honesty's criminal history points *do not really capture the totality of his criminal history behavior,*" Sent. Hg. Tr. at 16 (emphasis added), and underscoring for the sentencing judge that "long prison terms and supervised release won't stop him from possessing firearms or dangerous drugs here," *id*.; *see id.* at 17. Indeed, the district court's inquiry about an upward departure or variance appears to have been prompted by the government's initial erroneous Sentencing Guidelines calculation, *see* Sent. Hg. Tr. at 44: 18–19, to which the government adverted in its sentencing memorandum at 19.

By allocuting for a sentence of 96 months under the Guidelines, as correctly calculated, while implicitly advocating for a sentence of 115 months as more accurately capturing Honesty's criminal activity, the government breached the Plea Agreement, "transgress[ing] the agreed norm," *Pollard*, 959 F.2d at 1024. The government's duty of candor to the court did not permit it to characterize Honesty's criminal history category under the 77 to 96 months Guidelines range as understating his true criminal history. By specifying atypical circumstances and implicitly asserting that it favored an above-Guidelines sentence, the government violated its commitment

in the Plea Agreement to stand behind the parties' agreed upon Guidelines sentencing range. That failure is not avoided by a rote disclaimer: "I don't think I could advocate for that under the plea agreement." Sent. Hg. Tr. 16. "As a matter of precedent, . . . it is important that the government be required to carefully and fully live up to any plea agreement it has seen fit to enter into." *Bowler*, 585 F.2d at 856 (Harlington Wood, Jr., J., concurring). The government's commitment regarding the sentence for which it will advocate is likely to be the plea term of greatest importance to a defendant deciding whether to plead guilty and thereby waive "a panoply" of constitutional rights. *Mojica-Ramos*, 103 F.4th at 850 (citation omitted). Its centrality makes it appropriate to require the government's advocacy regarding its agreed sentencing recommendation to conform to "the most meticulous standards of promise and performance." *Id*. (citation omitted).

**B.**

On plain error review, Honesty must show prejudice. *See Puckett*, 123 F.4th at 135. The burden to show "a reasonable likelihood that the [breach] affected his sentence," *United States v. Bigley*, 786 F.3d 11, 15 (D.C. Cir. 2015) (internal quotation marks omitted), is "somewhat more relaxed in the area of sentencing than it is for trial errors," *King-Gore*, 875 F.3d at 1145–46 (quoting *In re Sealed Case*, 573 F.3d 844, 852 (D.C. Cir. 2009); and citing *United States v Saro*, 24 F.3d 283, 287–88 (D.C. Cir. 1994)). Still, Honesty has not made that showing.

The district court gave four reasons for imposing the upward variance in discussing the sentencing rationale. Sent. Hg. Tr. at 32–45. Three reasons involved the particular circumstances of the offenses to which Honesty pled guilty: Honesty had "brandished the weapon and did not merely

possess it," he had "abandoned the gun feet from an elementary school," and he had "possessed three different dangerous drugs," including PCP, which posed "an extreme danger to the residents of D.C." *Id.* at 44–45. These reasons for an upward variance were unrelated to the government's statements that Honesty's criminal history did not fully account for his prior criminal conduct.

The fourth reason for imposing an upward variance involved Honesty's criminal history, including his "lengthy history of gun and drug violations" as set forth in PSR 1 (and as revised Feb. 28, 2024). The district court was "struck not only by the number of offenses, but by their severity and that most of them involve weapons." *Id.* at 37. In addition, Honesty's "numerous disciplinary infractions while incarcerated and while on supervised release" caused the district court to have "no confidence that [Honesty] will comply with the law or release conditions" if given a shorter sentence. *Id.* at 37–38.

Thus, the district court judge provided a series of reasons for varying upward that did not involve whether Honesty's criminal history score "substantially under-represents the seriousness of his criminal history," U.S.S.G. § 4A1.3(a)(1). Honesty fails, therefore, to show that absent the government's sentencing advocacy there is a "reasonable likelihood" that the claimed breach of the Plea Agreement by the government would have affected his sentence. *King-Gore*, 875 F.3d at 1147.

## III.

This court reviews sentencing "for abuse of discretion under a two-step analysis," which first examines whether the district court committed "significant procedural error." *United*

*States v. Brevard*, 18 F.4th 722, 726 (D.C. Cir. 2021) (citations omitted). Procedural errors include "selecting a sentence based on clearly erroneous facts" or "failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Only if there is no such error" does the court proceed to the second step to consider "the overall reasonableness of the sentence in light of the sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. James Welden Brown*, 808 F.3d 865, 870 (D.C. Cir. 2015); *see Gall*, 552 U.S. at 49–51. "There is no preservation requirement for reasonableness review," but unpreserved procedural claims are reviewed for plain error. *James Welden Brown*, 808 F.3d at 870.

Neither of Honesty's procedural challenges demonstrate that the district court erred. Appellant Br. at 30–47.

**A.**

Honesty challenges the four reasons given by the district court for imposing an upward variance as unsupported by the record. Appellant Br. at 33–43. Trial counsel only objected to the upward variance "on the grounds that the allegation that Mr. Honesty brandished a gun rested on insufficient evidence and that defendant's criminal history score did not underrepresent the seriousness of his criminal record." *Id.* at 32 (citing Sent. Hg. Tr. at 17–20). To determine whether the district court abused its discretion, this court begins by reviewing Honesty's procedural challenge to the gun "brandishing" and criminal history rulings for clear error. Review of the school zone and drug possession rulings is for plain error. *See Gall*, 552 U.S. at 51. Honesty fails to show either.

First, the finding that Honesty "brandished" a weapon was supported by the audio recording of the 9-1-1 caller's statement

that Honesty had "pulled out a pistol" and "threatened to kill" her boyfriend. Gov't. Sent. Mem. at 3. The district court judge stated that the audio recording revealed the caller was "breathing hard," with "commotion and raised voices in the background." Sent. Hg. Tr. at 32. Because the caller was also "describing a very unsettling event that apparently took place just moments before," *id.*, the district court treated the statement as an excited utterance. *See United States v. Alexander*, 331 F.3d 116, 123 (D.C. Cir. 2003); FED. R. EVID. 803(2). Usually, because "excitement suspends the declarant's powers of reflection and fabrication," the statement is less likely to "be influenced by self interest and therefore rendered unreliable." *Alexander*, 331 F.3d at 122 (quoting *United States v. Tishon Brown*, 254 F.3d 454, 458 (3d Cir. 2001)). The caller provided later-corroborated details about Honesty's physical description and location. Therefore, the district court did not clearly err in finding Honesty was "brandishing" a firearm, much less abuse its discretion in viewing the 9-1-1 context and Honesty's gun possession to provide sufficient evidence of reliability, *see United States v. Leyva*, 916 F.3d 14, 25 (D.C. Cir. 2019), or err as a matter of law in applying a preponderance of evidence standard to find that Honesty brandished his firearm, *see United States v Fahnbulleh*, 752 F.3d 470, 481 (D.C. Cir. 2014).

Second, it is "not error for a district court to enter sentencing 'variances based on factors already taken into account by the Advisory Guidelines'" where "the Guidelines do not fully account for those factors." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (quoting *United States v. Richart*, 662 F.3d 1037, 1052 (8th Cir. 2007)). The district court found that Honesty's prior criminal history was not fully captured by the Guidelines calculation "for largely technical reasons" and that Honesty was a "de facto career offender" even if he did not meet the criteria under the

Guidelines. Sent. Hg. Tr. at 39, 44. For instance, a 2021 drug and firearm conviction for which Honesty had yet to be sentenced would have resulted in a longer Guidelines range had he already been sentenced. *Id.* at 38–39.

Third, Honesty was not charged with possessing a firearm near a school zone in violation of 18 U.S.C. § 922(q)(2)(A), and he maintains that the record does not support a finding that he knew he was within a school zone or the gun was likely to be recovered by a child (as opposed to the police who were pursuing him). Appellant Br. at 39–40. Even assuming Honesty had no knowledge of the school and the gun was likely to be promptly recovered by the police after he dropped it, there was no obvious error by the district court in finding that he endangered children and others nearby when he discarded a loaded firearm and magazine. Sent. Hg. Tr. at 35; *supra* n.2.

Fourth, Honesty's plea to possessing PCP with intent to distribute did not mean that all relevant aspects of his drug-related conduct were "already factored into" the Guidelines calculation of his sentencing range. Appellant Br. at 40–41. Honesty possessed two other Schedule I drugs in large quantities, Sent. Hg. Tr. at 36, which indicated an intent to distribute them, *see*, *e.g.*, *United States v. Dunn*, 846 F.2d 761, 764 (D.C. Cir. 1988). The district court characterized PCP as "incredibly dangerous," Sent. Hg. Tr. at 36, and a Guidelines calculation does not always account for such dangerousness, *see United States v. Iracks*, 106 F.4th 61, 68 (D.C. Cir. 2024).

**B.**

Honesty's unpreserved challenge that the district court failed to differentiate him "from other defendants included in the same 77–96 months [G]uidelines range," Appellant Br. at 32, 44, fares no better. "A judge imposing an above-Guidelines

sentence must offer in court, and in writing, a 'specific reason' why the defendant's case calls for a more severe sentence than other cases falling within the same Guidelines categories." *United States v. James Welden Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017) (quoting *James Welden Brown*, 808 F.3d at 866).  In imposing an upward variance, the district court gave four reasons for the variance.  *See* Part I, *supra*.  It did not recite the Section 3553(a) factors without individualized application to Honesty, *James Welden Brown*, 808 F.3d at 874, or rely only upon "broad observations" that "would apply equally to any defendant" convicted of these offenses and within the same Guidelines range, *United States v. Akhigbe*, 642 F.3d 1078, 1086 (D.C. Cir. 2011); *see United States v. Dawayne Brown*, 892 F.3d 385, 406 (D.C. Cir. 2018).  Instead, it "gave several specific and legitimate grounds" tied to Honesty's criminal conduct for imposing the above-Guidelines sentence.  *James Welden Brown*, 857 F.3d at 407.

Accordingly, the court affirms the judgment of conviction.